IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID LEROY NEWMAN,<br><br>             Plaintiff,<br>     v.<br><br>THE BANK OF NEW YORK MELLON,<br>et al.,<br><br>             Defendants. | 1:12-CV-1629  AWI GSA<br><br>ORDER ON DEFENDANTS'<br>MOTION TO DISMISS |

This is a mortgage related case brought by Plaintiff David Newman ("Newman") against Defendants Bank of New York Mellon ("BONY"), Mortgage Electronic Recording Systems ("MERS"), and Bank of America ("BOA").  Defendants move to dismiss the entirety of the complaint under Rule 12(b)(6).[1]   For the reasons that follow, the motion will be granted.

**FACTUAL BACKGROUND**

From the Complaint and its attached exhibits, Newman obtained a mortgage loan in November 2006 on property located at 2517 Brandy Court, Modesto, California.  The loan was secured by a deed of trust.  The deed of trust identifies the lender as Decision One Mortgage Company, the trustee as Fidelity National Title, and MERS as the beneficiary and as the nominee of the lender and its assigns and successors.

---

[1] Defendants have also filed a Request for Judicial Notice ("RJN") that requests the Court take judicial notice of a bankruptcy court document and the deed of trust, which was filed in the Stanislaus County Recorder's Office.  There is no opposition to this request.  The Court will grant the motion and take judicial notice of these documents.  See Fed. R. Evid. 201; Botelho v. U.S. Bank, N.A., 692 F.Supp.2d 1174, 1178 (N.D. Cal. 2010); Allen v. United Fin. Mortg. Corp., 660 F.Supp.2d 1089, 1093-94 (N.D. Cal. 2009).

1    After one payment, Newman was informed that Countrywide Home Loans
2 ("Countrywide") was going to be a servicer of the loan.  In January 2007, Newman began making
3 payments to Countrywide.
4    In mid-2008, when attempting to make a payment to Countrywide, Newman was
5 redirected to the BOA Home Loans website.
6    Newman contacted BOA about restructuring the mortgage, but was told that he did not
7 qualify because he was not behind on his payments.
8    In December 2009, Newman stopped making mortgage payments.  Plaintiff contacted
9 BOA regarding loan modifications from 2010 through 2011, but to no avail.
10    On August 22, 2011, MERS assigned its beneficial interest in the deed of trust and the
11 note to BONY.  See Complaint Ex. D.
12    On August 23, 2011, Newman filed for Chapter 7 Bankruptcy.
13    On September 14, 2011, MERS assigned its beneficial interest in only the deed of trust to
14 BONY.  See Complaint Ex. C.
15    On October 19, 2011, BONY filed a motion for relief from the automatic bankruptcy
16 stay.  As part of that motion, Defendants filed a copy of the September 2011 assignment and a
17 copy of Newman's note, which indicated that Countrywide had obtained the note from Decision
18 One.  Despite objections that the assignment by MERS appeared to be fraudulent, in November
19 2011 the Bankruptcy Court granted the motion.
20    On December 5, 2011, Newman filed an adversary proceeding against BONY and MERS.
21    On June 4, 2012, Newman received a notice of default, signed by Recontrust Co.
22 ("Recontrust"), who had been substituted as the deed of trust trustee on June 1, 2012.
23    On August 29, 2012, the Bankruptcy Court dismissed Newman's adversary proceeding
24 due to lack of standing.
25    A foreclosure sale was later set for October 10, 2012.
26    On October 1, 2012, Newman filed this lawsuit.  Newman alleges claims for declaratory
27 relief, injunctive relief, quasi contract, the Fair Debt Collection Practices Act (15 U.S.C. § 1692
28 et. seq.) ("FDCPA"), California Business & Professions Code § 17200 ("UCL"), and negligence.

**RULE 12(b)(6) FRAMEWORK**

Under Federal Rule of Civil Procedure 12(b)(6), a claim may be dismissed because of the plaintiff's "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A dismissal under Rule 12(b)(6) may be based on the lack of a cognizable legal theory or on the absence of sufficient facts alleged under a cognizable legal theory. Johnson v. Riverside Healthcare Sys., 534 F.3d 1116, 1121 (9th Cir. 2008); Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001). In reviewing a complaint under Rule 12(b)(6), all allegations of material fact are taken as true and construed in the light most favorable to the non-moving party. Marceau v. Blackfeet Hous. Auth., 540 F.3d 916, 919 (9th Cir. 2008); Vignolo v. Miller, 120 F.3d 1075, 1077 (9th Cir. 1999). However, the Court is not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." In re Gilead Scis. Sec. Litig., 536 F.3d 1049, 1056-57 (9th Cir. 2008); Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001). To "avoid a Rule 12(b)(6) dismissal, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009); see Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S.Ct. at 1949. The Ninth Circuit has explained:

> First, to be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively. Second, the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation.

Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011). In deciding whether to dismiss a claim under Rule 12(b)(6), the Court is generally limited to reviewing only the complaint, but it may take judicial notice of public records outside the pleadings, review materials which are properly submitted as part of the complaint, and review documents that are incorporated by reference in the Complaint if no party questions their authenticity. See Knievel v. ESPN, 393 F.3d 1068, 1076 (9th Cir. 2005); Lee v. City of Los Angeles, 250 F.3d 668, 688-89 (9th Cir. 2001). If a

Rule 12(b)(6) motion is granted, "[the] district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc). In other words, leave to amend need not be granted where amendment would be futile. Gompper v. VISX, Inc., 298 F.3d 893, 898 (9th Cir. 2002).

**DEFENDANTS' MOTION**

1. <u>1st Cause of Action – Declaratory Relief</u>

   *Defendants' Arguments*

   Defendants argue that dismissal is appropriate for several reasons. First, Newman cannot bring an action to determine whether the person initiating the foreclosure is authorized to do so. Second, Newman's allegations that the assignments of the deed of trust involve illegible signatures and "robo-signers" is irrelevant. Third, Newman has no standing to challenge any violations of the Pooling and Servicing Agreement ("PSA") that applies in this case.

   *Plaintiff's Opposition*

   Newman argues that he is not challenging authorization to foreclose, nor is he requiring Defendants to "produce the note." Rather, he is challenging whether the correct entity is initiating foreclosure. BONY does not have the right to enforce the mortgage because it does not own the loan, the note, or the mortgage. The loan was purportedly securitized and sold to a Mortgage Backed Securities Trust. The PSA that governed that trust provided for a closing date of October 30, 2007. However, the relevant assignments were not made prior to October 30, 2007, and thus, the loan was not part of the Mortgage Backed Securities Trust res. Because the PSA was violated, BONY never obtained an interest in the mortgage. Further, the circumstances of the assignment of the deed of trust are questionable. Two assignments were made by MERS to BONY, and the relevant signatures on those assignments are illegible, which indicates fraud. Further, the assignments by MERS appear to violate the automatic bankruptcy stay. Finally, MERS had no authority to assign the deed of trust, and the note and the deed of trust were improperly separated.

*Discussion*

The Complaint makes much of violations of the PSA that governed the Mortgage Backed Securities Trust, including the transfer of Newman's note after the closing date of that trust. However, this is not a novel contention. A majority of district courts have held that mortgagees like Newman who are not parties to a PSA do not have standing to raise violations of a PSA or to otherwise bring claims on the basis that a PSA was violated. See Sabherwal v. Bank of N.Y. Mellon, 2013 U.S. Dist. LEXIS 2930, *20-*21 (S.D. Cal. Jan. 7, 2013); Dinh v. Citibank, N.A., 2013 U.S. Dist. LEXIS 2312, *8-*11 (C.D. Cal. Jan. 7, 2013); Ramirez v. Kings Mortg. Servs., 2012 U.S. Dist. LEXIS 160583, *13-*14 (E.D. Cal. Nov. 8, 2012); Armstrong v. Chevy Chase Bank, FSB, 2012 U.S. Dist. LEXIS 144125, *6-*7 (N.D. Cal. Oct. 3, 2012); Hale v. World Sav. Bank, 2012 U.S. Dist. LEXIS 141917, *17-*18 (E.D. Cal. Oct. 1, 2012); Almutarreb v. Bank of N.Y. Trust Co., N.A., 2012 U.S. Dist. LEXIS 137202, *3-*7 (N.D. Cal. Sept. 24, 2012); Junger v. Bank of Am., 2012 U.S. Dist. LEXIS 23917, *7-*8 (C.D. Cal. Feb. 24, 2012). Thus, the alleged violation of the PSA is not a proper basis for this or any cause of action in the Complaint.[2] See id.

With respect to the allegations that various signatures on the assignments from MERS to BONY are illegible, Newman identifies no requirement that the signatures be legible. Moreover, the names that the signatures represent are identified by legible printing near the signatures themselves. Newman's opposition indicates that an issue regarding the assignments' signatures pertains to the requirements of California Civil Code § 2932.5. However, § 2932.5 does not apply to deeds of trust and thus, is not applicable in this case. See Walton v. MERS, 2013 U.S. App. LEXIS 2846, *3 (9th Cir. Feb. 7, 2013) (citing Herrera v. Federal Nat'l Mortg. Ass'n, 205 Cal.App.4th 1495, 1508-10 (2012)); Caballero v. Bank of Am., 468 Fed. Appx. 709 (9th Cir. Feb. 15, 2012); Calvo v. HSBC Bank USA, N.A., 199 Cal.App.4th 118, 123 (2011).

With respect to the argument that MERS's assignments to BONY violated the automatic bankruptcy stay, the Court is not convinced. It is true that violations of the automatic bankruptcy

---

[2] The Court finds it noteworthy that, despite Newman's contention that Defendants cannot foreclose, "no other party has ever come forward to enforce Plaintiff's obligations under the deed of trust." Gutierrez v. U.S. Bank, NA, 2013 U.S. Dist. LEXIS 14319, *5 (C.D. Cal. Feb. 1, 2013).

5

stay create void transactions. See In re Schwartz, 954 F.2d 569, 571 (9th Cir. 1992). However, if a party obtains retroactive relief from the automatic stay under 11 U.S.C. § 362(d), then there is no violation of the automatic stay and thus, no void transaction. See id. at 572-73. Here, the September 2011 assignment by MERS was presented to the Bankruptcy Court as part of the Defendants' motion for relief from the automatic stay. See Complaint ¶¶ 22-24. In November 2011, the Bankruptcy Court granted Defendants' motion for relief. See RJN Ex. B. The motion for relief was based on 11 U.S.C. § 362(d). See United States Bankruptcy Court for the Eastern District of California, Case No. 11-92999-E-7 at Doc. No. 10.[3] Also, in dismissing Newman's adversarial complaint, the Bankruptcy Court rejected Newman's arguments that both of MERS's assignments violated the automatic stay because such arguments were an improper collateral attack on the final order for relief from the automatic stay. See RJN Ex. B; A.P. Doc. No. 105 (Newman's opposition to the motion to dismiss). The Bankruptcy proceedings are now closed, and no appeals were taken.[4] See B.C. Docket; A.P. Docket. Given that relief from the automatic stay was granted, the assignments do not appear to be void. See In re Schwartz, 954 F.2d at 572-73. Additionally, citing Bankruptcy Rule of Procedure 3001(e), one bankruptcy court has held that a mere assignment of a deed of trust does not violate the automatic stay. See In re Waters, 2011 WL 5508657 (Bankr. D. Alaska Mar. 15, 2011) (holding that Alaska law did not require that an assignment of a deed of trust be recorded and that the assignment did not violate the automatic stay because there was "nothing to prohibit the transfer of a claim post-petition"). It is unclear why that reasoning would not also apply in this case. Cf. Small v. MERS, 2010 U.S. Dist. LEXIS 97135, *12-*13 (E.D. Cal. Sept. 16, 2010) (explaining that California Civil Code § 2934 states that an assignment of a deed of trust "may be recorded").

With respect to the argument that MERS lacked authority to assign the deed of trust, this argument is somewhat confusing. It appears that Newman is arguing that MERS did not have

---

[3] The Court takes judicial notice of the Bankruptcy Court for the Eastern District of California's docket in Newman's proceedings. See Fed. R. Evid. 201; Bias v. Moynihan, 508 F.3d 1212, 1225 (9th Cir. 2007). Newman filed two bankruptcy matters that are relevant to this case, the Chapter 7 proceeding, which is Case No. 11-92999-E-7 (hereinafter "B.C."), and the adversary proceeding, which is Case No. 11-09080 (hereinafter "A.P.").

[4] Since the bankruptcy proceedings are final, issue preclusion and/or claim preclusion may apply in this case. However, since the parties have not raised the issue, the Court express no opinion at this time.

authority to transfer the deed of trust, was not Decision One's agent, and that the deed of trust and the mortgage have been improperly split.  These positions do not appear to be meritorious.  First, the deed of trust identifies the lender as Decision One, identifies MERS as the beneficiary and the nominee of the lender and the lender's assigns and successors, and grants MERS *inter alia* the right to foreclose and the right to cancel the deed of trust.  See RJN Ex. A.  Under this language, "MERS, as nominal beneficiary, has the power to assign its interest under a deed of trust."  Herrera v. Fed. Nat'l Mortg. Ass'n., 205 Cal.App.4th 1495, 1498 (2012); see also Ogilvie v. Select Portfolio Servicing, 2012 U.S. Dist. LEXIS 147493, *8-*10 (N.D. Cal. Oct. 12, 2012).  Second, "California's statutory nonjudicial foreclosure scheme (Civil Code §§ 2924–2924k) does not require that the foreclosing party have a beneficial interest in or physical possession of the note."[5]  Shuster v. BAC Home Loans Servicing, LP, 211 Cal.App.4th 505, 512 (2012); see Lane v. Vitek Real Estate Industries Group, 713 F.Supp.2d 1092, 1098 (E.D. Cal. 2010); Debrunner v. Deutsche Bank National Trust Co., 204 Cal.App.4th 433, 440-42 (2012).  Finally, securitization of a note does not affect the ability to foreclose.  See Hale, 2012 U.S. Dist. LEXIS 141917 at *19; Sami v. Wells Fargo Bank, 2012 U.S. Dist. LEXIS 38466, *12-*14 (N.D. Cal. Mar. 21, 2012); Tang v. Bank of America, N.A., 2012 U.S. Dist. LEXIS 38642, *23 (C.D. Cal. Mar. 19, 2012); Lane, 713 F.Supp.2d at 1099.

Additionally, Newman has made "robo-signing" allegations.  Luis Roldan signed the August 2011 assignment on behalf of MERS, and Cecilia Rodriguez signed the September 2011 assignment on behalf of MERS.  The Complaint alleges that these individuals are "robo-signers" who are not employed by MERS, but are employed by BOA.  See Complaint ¶ 108.  Although there is a split of authority, this Court has recognized allegations that an individual is not an employee of MERS may call into question the validity of an assignment of a deed of trust and/or a substitution of trustee, which could then void a trustee's sale.  See Halajian v. Deutsche Bank

---

[5] *In re Veal*, 450 B.R. 897 (B.A.P. 9th Cir. 2011), cited by Newman, is distinguishable.  That case involved a mortgagee's standing to foreclose in a court proceeding, involved Arizona and Illinois law, and acknowledged that nonjudicial foreclosure laws like California's may have changed the requirements regarding note possession and ownership.  See Nottage v. Bank of N.Y. Mellon, 2012 U.S. Dist. LEXIS 153340, *21-*22 (D. Haw. Oct. 25, 2012); Robertson v. Citibank, N.A., 2012 U.S. Dist. LEXIS 144698, *9 n.4 (N.D. Cal. Oct. 5, 2012); Halajian v. NDEX West, L.L.C., 2012 U.S. Dist. LEXIS 75724, *23 n.2 (E.D. Cal. May 30, 2012); Debrunner, 204 Cal.App.4th at 442.

Nat'l Trust Co., 2013 U.S. Dist. LEXIS 20341, *19-*20 (E.D. Cal. Feb. 13, 2013); Michel v. Deutsche Bank Trust, 2012 U.S. Dist. LEXIS 134949, *16-*19 (E.D. Cal. Sept. 20, 2012); see also Tang, 2012 U.S. Dist. LEXIS 38642 at *33-*36.  However, the Ninth Circuit has recognized that "'MERS relies on its members to have someone on their own staff become a MERS officer with the authority to sign documents on behalf of MERS." Cervantes v. Countrywide Home Loans, Inc., 656 F.3d 1034, 1040 (9th Cir. 2011).  That is, "MERS instructs its members to have someone on their own staff became a certified MERS officer with authority to sign on behalf of MERS." Steers v. CitiMortgage, Inc., 2011 U.S. Dist. LEXIS 145033, *7 (D. Ariz. Dec. 15, 2011).  Under this practice, dual agency appears to be anticipated, and there does not appear to be a requirement that an agent actually be employed by MERS.  Thus, this recognized practice within the MERS system lessens the impact and relevance of a signatory's employment status.  Given the MERS system's signing and agency practices, the Court now concludes that, for an allegation of employment status to withstand dismissal, it must be coupled with at least an allegation that the signatory does not actually have authority to sign on behalf of MERS.  Cf. Tang, 2012 U.S. Dist. LEXIS 38642 at *35 (noting *inter alia* that plaintiff alleged that the signatory had no authority to sign a substitution of trustee).  As applied here, there is only an insufficient and unsupported allegation that Roldan and Rodriguez are employed by BOA.

In sum, Newman has not shown why Defendants are the wrong entities to foreclose on his property.  Dismissal of this cause of action is appropriate.

    2.    3rd Cause of Action – Quasi-Contract

This cause of action is based on the theory that Defendants received loan payments from Newman even though they had no interest that would entitle them to the payments.  This claim essentially relies on the same allegations that underlie the first cause of action, i.e. Defendants' violation of the PSA, ownership of the note, and assignments of the deed of trust.  For the same reasons that the first cause of action fails, so too fails this claim.  Dismissal is appropriate.  See In re Schwartz, 954 F.2d at 572-73; Ogilvie, 2012 U.S. Dist. LEXIS 147493 at *8-*10; Armstrong, 2012 U.S. Dist. LEXIS 144125 at *13-*15; Junger, 2012 U.S. Dist. LEXIS 23917 at *6-*9; Shuster, 211 Cal.App.4th at 512; Debrunner, 204 Cal.App.4th at 440-42; RJN Ex. B.

### 3. 4th Cause of Action – FDCPA

*Parties' Argument*

Defendants argue that they are not "debt collectors," and thus are not subject to the FDCPA. Newman argues that he does not contend that foreclosure is "debt collection," rather he contends that Defendants are not true creditors and thus, cannot collect on the debt.

*Discussion*

As confirmed by the opposition, Newman's FDCPA claim is based on the notion that Defendants are not the correct creditors/owners/entities to foreclose or collect money owed pursuant to the mortgage. That is, this claim is based on the same theories that underlie the first cause of action. For the same reasons that the first cause of action fails, so too fails this claim. Dismissal is appropriate.  See In re Schwartz, 954 F.2d at 572-73; Dinh, 2013 U.S. Dist. LEXIS 2312 at *11; Ogilvie, 2012 U.S. Dist. LEXIS 147493 at *8-*10; Almutarreb, 2012 U.S. Dist. LEXIS 137202 at *7-*8; Junger, 2012 U.S. Dist. LEXIS 23917 at *10; Shuster, 211 Cal.App.4th at 512; Debrunner, 204 Cal.App.4th at 440-42; RJN Ex. B.

### 4. 5th Cause of Action – UCL

*Defendants' Argument*

Defendants argue that dismissal of this claim is appropriate for several reasons. First, Newman lacks standing to bring this claim because there are no allegations that indicate how he has suffered an injury in fact and lost money or property because of Defendants' conduct. Second, the Complaint does not allege facts showing that Defendants engaged in any unlawful, unfair, or fraudulent practices. The Complaint identifies California Civil Code § 1095, but there are no factual allegations that actually show a violation. Further, although the Complaint alleges that Defendants demanded and accepted payments for debts that did not exist, the note and deed of trust clearly refute that allegation. The Complaint also alleges that Defendants improperly made reports to credit bureaus in contravention of instructions during the loan modification efforts, but Newman actually stopped making payments and there are no allegations that he was told to stop. Finally, despite the allegations that Defendants acted as beneficiaries under the deed of trust without authority, MERS's assignments of the beneficial interest were proper and valid.

*Plaintiff's Opposition*

Newman argues that dismissal is inappropriate. First, the Complaint alleges that he has been damaged because: (1) multiple parties may seek to enforce his debt; (2) the title to his home has been clouded, which affects the marketability of the home; (3) he has been paying the wrong party for an undetermined amount of time and overpaid in interest that was over-calculated; (4) he cannot determine whether he sent his mortgage payments to the right party; (5) his credit and credit score have been damaged; (6) he has expended significant funds to cover attorney's fees; and (7) because the right of Defendants to collect payments is at issue, he has suffered monetary damages and the imminent loss of his house. Second, the Complaint alleges that Defendants engaged in practices that were unfair, likely to deceive, and unlawful. In part Defendants' conduct was unlawful because it violated the FDCPA. Finally, the Complaint alleges that Defendants' pattern of collecting on a debt that they have no right to collect on is fraudulent in the sense that it is a practice that is extremely likely to deceive Newman and public.

*Legal Standard*

The UCL prohibits "unfair competition," which is defined to mean any "unlawful, unfair, or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200; In re Tobacco II Cases, 46 Cal.4th 298, 311 (2009). A private person has standing to bring a UCL claim when the person: (1) establishes a loss or deprivation of money or property sufficient to qualify as an injury in fact, i.e. economic injury; and (2) shows that the economic injury was the result, i.e. caused by, the unfair business practice that is the gravamen of the claim. Kwikset Corp. v. Superior Court, 51 Cal.4th 310, 322 (2011); see also Clayworth v. Pfizer, Inc., 49 Cal.4th 758, 788 (2010).

For claims based on "unlawful" conduct, the UCL "borrows violations of other laws and treats these violations, when committed pursuant to business activity, as unlawful practices independently actionable . . . and subject to the distinct remedies provided thereunder." Farmers Ins. Exch. v. Superior Court, 2 Cal.4th 377, 383 (1992). That is, a "defendant cannot be liable under [the UCL] for committing 'unlawful business practices' without having violated another law." Ingles v. Westwood One Broadcasting Servs., Inc., 129 Cal.App.4th 1050, 1060 (2005).

For claims based on "fraudulent conduct," the UCL "does not refer to the common law

tort of fraud . . . ." Puentes v. Wells Fargo Home Mortg., Inc., 160 Cal.App.4th 638, 645 (2008). A business practice is "fraudulent" under the UCL if "members of the public are likely to be deceived." Kaldenbach v. Mutual of Omaha Life Ins. Co.,178 Cal.App.4th 830, 848 (2009). Whether a business practice is "fraudulent" is "based on the likely effect such practice would have on a reasonable consumer." McKell v. Washington Mutual, Inc., 142 Cal.App.4th 1457, 1471 (2006).

For claims based on "unfair" practices brought by consumers, there is a split of authority and at least three different methods for determining whether a business practice is "unfair": (1) the "balancing test" in which the impact on the victim is balanced against the reasons, justifications, and motives of the wrongdoer; (2) the "tethered test" whereby an allegedly violated public policy is tethered to specific constitutional, statutory, or regulatory provisions; and (3) the "section 5 test" which adopts the factors that determine whether Section 5 of the Federal Trade Commission Act has been violated, i.e. a substantial consumer injury, the injury is not outweighed by countervailing benefits to consumers or competition, and the consumers could not have reasonably avoided the injury. See In re Ins. Installment Fee Cases, 211 Cal.App.4th 1395, 1417-18 (2012); Davis v. Ford Motor Credit Co., LLC, 179 Cal.App.4th 581, 583-88 (2009).

*Discussion*

Initially, Defendants are incorrect that Newman has failed to allege a loss of money or property. In part, the Complaint alleges that Newman has paid too much interest and that his credit score has been adversely affected because of Defendants' conduct. These deprivations constitute economic injury. See Rubio v. Capital One Bank, 613 F.3d 1195, 1204 (9th Cir. 2010); Valasquez v. Chase Home Financial LLC, 2010 U.S. Dist. LEXIS 82065, *22 n.6 (N.D. Cal. Aug. 11, 2010); White v. Trans Union, LLC, 462 F.Supp.2d 1079, 1084 (C.D. Cal. 2006); Tortolano v. Residential Credit Solutions, 2013 Cal. App. Unpub. LEXIS 1785, *26 (Mar. 12, 2013).[6]

With respect to "unlawful" conduct, Newman's opposition identifies and relies on a

---

[6] This Court is not bound by state rules regarding unpublished cases, and may consider unpublished cases as persuasive authority. Employers Ins. of Wausau v. Granite State Ins. Co., 330 F.3d 1214, 1220, n.8 (9th Cir. 2003); Altman v. HO Sports Co., 821 F.Supp.2d 1178, 1189 n.14 (E.D. Cal. 2011).

violation of the FDCPA, while the Complaint expressly alleges that Defendants violated California Civil Code § 1095.[7]  However, as discussed above, the Complaint does not state a claim for violation of the FDCPA.  As for Civil Code § 1095, that statutes states that, when an attorney in fact execute an instrument that transfers an estate in real property, the attorney in fact "must subscribe the name of his principal on it."  Cal. Civ. Code § 1095.  Here, the Court is unaware of any attorneys-in-fact involved in this matter.  Further, one court has recognized that the beneficial interest in a deed of trust is not an estate in property under § 1095.  See Coburn v. Bank of N.Y. Mellon, N.A., 2011 U.S. Dist. LEXIS 29654, *8 (E.D. Cal. Mar. 21, 2011). Considering Newman's failure to defend this allegation, the Court concludes that § 1095 has no application to this case.  Alternatively, assuming that § 1095 does apply and that Newman means to challenge the August and September assignments by MERS, those assignments are signed by individuals who are expressly identified as acting for MERS.  See Complaint Exs. C, D.  As such, the assignments do not reflect a violation of § 1095.  See Gyene v. Steward Fin., Inc., 2013 U.S. Dist. LEXIS 5442, *10 (C.D. Cal. Jan. 11, 2013).

With respect to "unfair" and "fraudulent" conduct, Newman's position is that the Defendants do not have a valid interest in the mortgage, note, and/or deed of trust and thus, cannot foreclose or collect money.  Again, the basis of this claim is the same as the basis of the first cause of action.  For the same reasons that the first cause of action fails, this claim also fails.

In sum, the Complaint does not adequately allege unlawful, unfair, or fraudulent conduct. Dismissal of this cause of action is appropriate.

    5.    6th Cause of Action – Negligence

*Defendants' Arguments*

Defendants argue that the complaint does not reveal that any duty of care was owed to Newman or that there was a breach of a duty of care.  There are no allegations that indicate that Defendants exceeded the scope of a traditional money lender.  Further, the damages identified under this cause of action are speculative.

---

[7] The Complaint alleges that Defendants violated California Penal Code § 532(f)(a)(4).  See Complaint ¶ 97. However, Penal Code § 532(f)(a)(4) does not exist.

12

*Plaintiff's Opposition*

Newman argues that the Complaint contains allegations that show BOA exceeded its role as a traditional money lender. BOA told Newman that to obtain a loan modification, he would have to be 90 days in default. Newman reluctantly did so and several times requested loan modification documents. Newman sent the documents to BOA in March 2010, but he had to contact BOA in August/September 2010 because he had not heard from them. BOA stated that they had attempted to reach Newman unsuccessfully. Newman continued to work with BOA and was told that his application was denied because the information was not current. Newman contacted another person at BOA in March 2011, and was told that several denial letters were sent by mistake, he was not denied, and that he should be patient. Newman heard nothing further from BOA. This conduct goes beyond the domain of a typical money lender. See Ansanelli v. J.P. Morgan Chase Bank, 2011 U.S. Dist. LEXIS 32350 (N.D. Cal. Mar. 28, 2011).

*Discussion*

The allegations in the Complaint show that this claim is premised on violations of the PSA. "Defendants . . . breached their duty of care when they failed to follow the guidelines established in the PSA requiring transfer of the Note and Deed of Trust into the CWMBS Trust by the Closing Date." Complaint ¶ 128. Because Newman lacks standing to challenge violations of the PSA, dismissal of this cause of action is appropriate. See Gutierrez, 2013 U.S. Dist. LEXIS 14319 at *7-*8; Almutarreb, 2012 U.S. Dist. LEXIS 137202 at *7-*8.

Newman's opposition urges that there is an additional negligence claim beyond that which is based on violation of the PSA. Specifically, Newman's opposition relies on his attempts to obtain a loan modification from BOA. Reliance on the attempted loan modification is unavailing.

First, the Complaint does not give fair notice under Rule 8 that the loan modification process is at issue under this cause of action. Although the first paragraph under the negligence claim incorporates by reference all of the 122 preceding paragraphs, the only paragraph that actually alleges a breach of duty is Paragraph 128. See Complaint ¶¶ 123-129. As quoted above, that paragraph ineffectually relies on violations of the PSA. Id. at ¶ 128. Nothing under this

1  cause of action fairly suggests that the attempted loan modification is at issue.

2  Second, "even where a lender offers a loan modification, that is nothing more than a
3  renegotiation of loan terms," which is "the same activity that occurred when the loan was first
4  originated; the only difference being that the loan is already in existence." Morgan v. US Bank
5  Nat'l Ass'n, 2013 U.S. Dist. LEXIS 25586, *9 (N.D. Cal. Feb. 25, 2013); Armstrong, 2012 U.S.
6  Dist. LEXIS 144125 at *11.  Therefore, renegotiation and loan modification are traditional
7  money lending activities. Morgan, 2013 U.S. Dist. LEXIS 25586 at *9-*10; Armstrong, 2012
8  U.S. Dist. LEXIS 144125 at *11-*12; Settle v. World Sav. Bank, F.S.B., 2012 U.S. Dist. LEXIS
9  4215, *24-*27 (C.D. Cal. Jan. 11, 2012).  "[A]s a general rule, a financial institution owes no
10 duty of care to a borrower when the institution's involvement in the loan transaction does not
11 exceed the scope of its conventional role as a mere lender of money." Ragland v. U.S. Bank
12 Nat'l Assn., 209 Cal.App.4th 182, 206 (2012); Nymark v. Heart Fed. Sav. & Loan Assn., 231
13 Cal.App.3d 1089, 1096 (1991).  However, this does not mean that "a lender can never be held
14 liable for negligence in its handling of a loan transaction within its conventional role as a lender
15 of money." See Ottolini v. Bank of Am., 2011 U.S. Dist. LEXIS 92900, *16-*17 (N.D. Cal.
16 Aug. 19, 2011); Jolley v. Chase Home Finance, LLC, 213 Cal.App.4th 872, 902 (2013).

17 Here, the allegations indicate that BOA did not make a timely decision on Newman's
18 loan modification request and poorly communicated with Newman.  Without more, merely
19 failing to respond to a loan modification application does not violate a duty of care. See Ottolini,
20 2011 U.S. Dist. LEXIS 92900 at *16-*20.  Without further elaboration and explanation from
21 Newman, a claim has not been adequately stated.  Nevertheless, the Court cannot say that the
22 allegations foreclose a negligence cause of action.  Depending on the representations made by,
23 and the conduct of, BOA during Newman's attempt to obtain a loan modification, it is possible
24 that a duty of care may have been breached.  Cf. McCormick v. US Bank, N.A., 2013 U.S. Dist.
25 LEXIS 34994, *22-*36 (S.D. Cal. Mar. 12, 2013); Becker v. Wells Fargo Bank, NA, Inc., 2012
26 U.S. Dist. LEXIS 170729, *32-*35 (E.D. Cal. Nov. 30, 2012); Jolley, 213 Cal.App.4th at 901-
27 06.  Because the Court cannot determine that amendment would be futile, the negligence cause of
28 action will be dismissed with leave to amend.

     6.    2nd Cause of Action – Injunction

*Defendants' Argument*

Defendants argue that there is no injunctive relief without an underlying claim. Because the Complaint does not allege viable causes of action, injunctive relief is inappropriate. Further, although the Complaint alleges that Civil Code § 2923.5 was violated, the other allegations show that BOA sent Newman a loan modification packet, considered the modification application, and then denied it. This conduct complies with § 2923.5.

*Plaintiff's Opposition*

Newman argues that dismissal is not appropriate because he has raised serious issues regarding BONY's claim to the note, as well as the validity of the assignments of the beneficial interest in the deed of trust. BONY cannot show that it possesses the note or that the note was ever transferred to the Mortgage Backed Securities Trust.

*Discussion*

As an initial matter, injunctive relief is a remedy, not a cause of action, and a request for injunctive relief will fail in the absence of an underlying cause of action. See Nguyen v. Bank of Am. Nat'l Ass'n, 2011 U.S. Dist. LEXIS 131776, *23-*24 (N.D. Cal. Nov. 15, 2011); Shamsian v. Atlantic Richfield Co., 107 Cal.App.4th 967, 684-85 (2003); City of S. Pasadena v. Department of Transp., 29 Cal.App.4th 1280, 1293 (1994). Here, the Court has determined that none of the Complaint's other causes of action are properly pled. To the extent that injunctive relief is predicated on the above dismissed causes of action, dismissal is appropriate.

However, the Complaint also alleges that Defendants "did not comply with California Civil Code § 2923.5, did not attempt to contact [Newman] before the Notice of Default and Election to Sell was executed prior and the Debt Validation letter by Reconstruct before they were successor Trustee, thus the pending Notice of Default is invalid." Complaint ¶ 62. Although unclear, the Court reads this paragraph as an attempt to allege a violation of § 2923.5.

A notice of default cannot be filed until 30 days after the mortgage servicer/lender has met the requirements of Civil Code § 2923.5. See Cal. Civ. Code § 2923.5(a); Stebley v. Litton Loan Servs., 202 Cal.App.4th 522, 525-26 (2011); Mabry v. Superior Court, 185 Cal.App.4th

208, 221 (2010).  Section 2923.5 requires that "a mortgagee, trustee, beneficiary, or authorized agent must contact the borrower 'in person or by telephone in order to assess the borrower's financial situation and explore options for the borrower to avoid foreclosure' or satisfy due diligence requirements before a notice of default is filed."  Intengan v. BAC Home Loans Servicing LP, - - - Cal.App.4th - - -, 2013 Cal. App. LEXIS 225, *16 (2013); Skov v. U.S. Bank National Assn., 207 Cal. App. 4th 690, 695-96 (2012).  "Due diligence requires sending a letter by first-class mail, making three attempts to contact the borrower by telephone, and sending a certified letter if no response is received within two weeks of the telephone attempts."  Intengan, - - - Cal.App.4th - - -, 2013 Cal. App. LEXIS 225 at *16-*17 (2013) (citing Civil Code § 2923.5(e)).  Section 2923.5 does not require the lender to modify the loan.  Skov, 207 Cal.App.4th at 695-96; Mabry v. Superior Court,185 Cal.App.4th 208, 214 (2010).  "The only remedy for noncompliance with the statute is the postponement of the foreclosure sale."  Skov, 207 Cal.App.4th at 696; Mabry, 185 Cal.App.4th at 214.  There is no remedy for a violation of § 2923.5 if the foreclosure sale has already occurred.  See West v. JPMorgan Chase Bank, N.A., 214 Cal.App.4th 780, 800 n.6 (2013); Stebley, 202 Cal.App.4th at 526.

      Here, the § 2923.5 allegation is a mere legal conclusion that amounts to no more than "Defendants violated the statute."  See Complaint ¶ 62.  Additional facts are needed.  See Iqbal, 129 S.Ct. at 1949; Starr, 652 F.3d at 1216.  In order to plead a violation of § 2923.5, a plaintiff should include allegations that: (1) he did not receive mail or telephone calls from the mortgage servicer/lender regarding assessing his financial situation and exploring alternatives to foreclosure; (2) he was not purposefully avoiding corresponding with the mortgage servicer/lender, and; (3) he could have been contacted if due diligence had been exercised.  Cf. Cal Civ. Code § 2923.5(a), (e); Heflebower v. JP Morgan Chase Bank, NA, 2012 U.S. Dist. LEXIS 157759, *7-*8 (E.D. Cal. Nov. 2, 2012); Mabry, 185 Cal.App.4th at 217, 221.  Because these allegations are not in the Complaint, the request for injunctive relief will be dismissed.

      After considering the arguments and the allegations in the Complaint, dismissal will be with leave to amend.  In pertinent part, the Complaint alleges:

> In or about March of 2010, Plaintiff contacted [BOA] to request a Loan Modification package and was informed it would arrive in 7 to 10 days.  It never

> arrived.
>
> Plaintiff again called in late May or early June of 2010 and was told [BOA] did not have his request. Finally, Plaintiff received three Loan Modification packages all at once. He immediately completed on and returned it to [BOA]. Plaintiff did not receive a response from [BOA] in August or September 2010, at which time Plaintiff contacted [BOA] and was told they could not contact Plaintiff, a fact Plaintiff disputes.
>
> Plaintiff informed [BOA] that this could not be true because they had his home phone, cell phone, and e-mail address. Plaintiff continued to attempt to work with a representative of [BOA] and again was told he was denied because his information wasn't current. Plaintiff contacted one person of [BOA] in March 2011, who told Plaintiff that several denial letters were sent out by mistake and the he was not denied and to be patient. During this time Plaintiff was receiving several collection calls daily.
>
> In August of 2011, . . . Plaintiff filed for protection under Chapter 7 of the Bankruptcy Code.

Complaint ¶¶ 18-21. As Defendants point out, these allegations show that Newman was in contact with BOA regarding a loan modification. However, the allegations also show that BOA was not particularly responsive and did not necessarily give accurate information. Moreover, the substance of any communications with BOA is not adequately discussed. The only communications that are apparent do not indicate either that Newman's current financial situation was discussed or that any alternatives to foreclosure were discussed. The communications center around Newman's attempt to obtain a loan modification application and then trying to discover the status of his submitted application. Nothing indicates that the modification was discussed by BOA as an alternative to foreclosure. Contrary to Defendants' arguments, the Complaint does not conclusively show that Newman cannot allege a violation of § 2923.5. Dismissal will be without prejudice.[8]

### CONCLUSION

Defendants have moved to dismiss each of the claims against them. As discussed above, the Court agrees that the Complaint does not state a viable claim. The allegations do not

---

[8] Newman appears to contend that the foreclosure proceedings are flawed because Recontrust sent him a debt validation letter on May 31, 2012, even though Recontrust was not substituted as trustee until June 1, 2012. However, Newman does not identify what California statute this violates. Cf. Cal. Civ. Code § 2924 (requiring the filing of a notice of default, but not a debt validation letter).

17

plausibly indicate that Defendants cannot enforce the deed of trust, nor do the allegations plausibly show that Defendants breached a duty of care or violated Civil Code § 2923.5. Nevertheless, because it is not clear that amendment would be futile, the Court will dismiss the Complaint with leave to amend. Any amended complaint must comply with the requirements of Federal Rule of Civil Procedure 11 and be consistent with the analyses in this order.

### **ORDER**

Accordingly, IT IS HEREBY ORDERED that:

1. Defendants' motion to dismiss is GRANTED;
2. The Complaint is DISMISSED with leave to amend;
3. Plaintiff may file an amended complaint within twenty-one (21) days of service of this order; and
4. The failure to file an amended complaint within the time allotted will result in the withdrawal of leave to amend and the closure of this case without further notice.

IT IS SO ORDERED.

Dated:   April 10, 2013

SENIOR DISTRICT JUDGE