1
2
3
4
5

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID LEROY NEWMAN, | CASE NO. 1:12-CV-1629  AWI GSA |
| Plaintiff, | |
| v. | ORDER ON DEFENDANTS' MOTION TO DISMISS THE FIRST AMENDED COMPLAINT |
| THE BANK OF NEW YORK MELLON, et al., | |
| Defendants. | (Doc. Nos. 24, 25) |

This is a mortgage related case brought by Plaintiff David Newman ("Newman") against Defendants Bank of New York Mellon ("BONY"), Mortgage Electronic Recording Systems ("MERS"), and Bank of America ("BOA").  The active complaint is the First Amended Complaint ("FAC"), which was filed in response to an order that granted a Rule 12(b)(6) motion filed by Defendants.  Defendants now move to dismiss the entirety of the FAC under Rule 12(b)(6).   For the reasons that follow, the motion will be granted.

## FACTUAL BACKGROUND

From the Complaint and its attached exhibits, Newman obtained a mortgage loan in November 2006 on property located at 2517 Brandy Court, Modesto, California.  The loan was secured by a deed of trust.  The deed of trust identifies the lender as Decision One Mortgage Company, the trustee as Fidelity National Title, and MERS as the beneficiary and as the nominee of the lender and its assigns and successors.

After one payment, Newman was informed that Countrywide Home Loans ("Countrywide") was going to be a servicer of the loan.  In January 2007, Newman began making

1   payments to Countrywide.

2   In mid-2008, when attempting to make a payment to Countrywide, Newman was

3   redirected to the BOA Home Loans website.

4   Newman contacted BOA about restructuring the mortgage, but was told that he did not

5   qualify because he was not behind on his payments.

6   In December 2009, Newman stopped making mortgage payments.  Plaintiff contacted

7   BOA regarding loan modifications from 2010 through 2011, but to no avail.

8   On August 22, 2011, MERS assigned its beneficial interest in the deed of trust and the note

9   to BONY.  The assignment is signed by Luis Roldan as an Assistant Secretary of MERS.

10   On August 23, 2011, Newman filed for Chapter 7 Bankruptcy.

11   On September 14, 2011, MERS assigned its beneficial interest in only the deed of trust to

12   BONY.  The assignment is signed by Cecilia Rodriguez as an Assistant Secretary of MERS.

13   On October 19, 2011, BONY filed a motion for relief from the automatic bankruptcy stay.

14   See United States Bankruptcy Court for the Eastern District of California, Case No. 11-92999-E-7

15   at Doc. Nos. 10, 12, 13, 26.  As part of that motion, Defendants filed a copy of the September

16   2011 assignment and a copy of Newman's note, which indicated that Countrywide had obtained

17   the note from Decision One.  Despite objections that the assignment by MERS appeared to be

18   fraudulent, in November 2011 the Bankruptcy Court granted the motion.

19   On December 5, 2011, Newman filed an adversary proceeding against BONY and MERS.

20   On June 4, 2012, Newman received a notice of default, signed by Recontrust Co.

21   ("Recontrust"), who had been substituted as the deed of trust trustee on June 1, 2012.

22   On August 29, 2012, the Bankruptcy Court dismissed Newman's adversary proceeding due

23   to lack of standing.

24   A foreclosure sale was later set for October 10, 2012.

25   On October 1, 2012, Newman filed this lawsuit.  Newman alleges claims for declaratory

26   relief, quasi-contract, California Civil Code § 2923.5, the Fair Debt Collection Practices Act (15

27   U.S.C. § 1692 et. seq.) ("FDCPA"),California Business & Professions Code § 17200 ("UCL"),

28   and negligence.

## RULE 12(b)(6) FRAMEWORK

Under Federal Rule of Civil Procedure 12(b)(6), a claim may be dismissed because of the plaintiff's "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  A dismissal under Rule 12(b)(6) may be based on the lack of a cognizable legal theory or on the absence of sufficient facts alleged under a cognizable legal theory.  Conservation Force v. Salazar, 646 F.3d 1240, 1242 (9th Cir. 2011); Johnson v. Riverside Healthcare Sys., 534 F.3d 1116, 1121 (9th Cir. 2008).  In reviewing a complaint under Rule 12(b)(6), all allegations of material fact are taken as true and construed in the light most favorable to the non-moving party.  Faulkner v. ADT Sec. Servs., 706 F.3d 1017, 1019 (9th Cir. 2013); Johnson, 534 F.3d at 1121.  However, complaints that offer no more than "labels and conclusions" or "a formulaic recitation of the elements of action will not do."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Dichter-Mad Family Partners, LLP v. United States, 709 F.3d 749, 761 (9th Cir. 2013).  The Court is not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."  Wilson v. Hewlett-Packard Co., 668 F.3d 1136, 1145 n. 4 (9th Cir. 2012); Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001).  To "avoid a Rule 12(b)(6) dismissal, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  Iqbal, 556 U.S. at 678; see Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 556 U.S. at 678; Dichter-Mad, 709 F.3d at 761. "Plausibility" means "more than a sheer possibility," but less than a probability, and facts that are "merely consistent" with liability fall short of "plausibility."  Iqbal, 556 U.S. at 678; Li v. Kerry, 710 F.3d 995, 999 (9th Cir. 2013).  Complaints that offer no more than "labels and conclusions" or "a formulaic recitation of the elements of action will not do."  Iqbal, 556 U.S. at 678; Dichter-Mad, 709 F.3d at 761.  The Ninth Circuit has distilled the following principles from *Iqbal* and *Twombly*:

> First, to be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable

the opposing party to defend itself effectively.  Second, the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation.

Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011).  In assessing a motion to dismiss, courts may consider documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice.  Dichter-Mad, 709 F.3d at 761.  If a motion to dismiss is granted, "[the] district court should grant leave to amend even if no request to amend the pleading was made . . . ."  Henry A. v. Willden, 678 F.3d 991, 1005 (9th Cir. 2012).  However, leave to amend need not be granted if amendment would be futile or if the plaintiff has failed to cure deficiencies despite repeated opportunities.  See Mueller v. Aulker, 700 F.3d 1180, 1191 (9th Cir. 2012); Telesaurus VPC, LLC v. Power, 623 F.3d 998, 1003 (9th Cir. 2010).

## DEFENDANTS' MOTION[1]

1.      1st Cause of Action – Declaratory Relief

*Defendants' Argument*

Defendants argue that dismissal is appropriate for several reasons.  First, Newman cannot bring an action to determine whether the person initiating the foreclosure is authorized to do so.  Second, Newman's allegations that the assignments of the deed of trust involve illegible signatures and "robo-signers" are irrelevant.  Third, Newman has no standing to challenge any violations of the Pooling and Servicing Agreement ("PSA") that applies in this case.

*Plaintiff's Opposition*

Newman argues that he is not challenging authorization to foreclose, nor is he requiring Defendants to "produce the note."  Rather, he is challenging whether the correct entity is initiating foreclosure.  BONY does not have the right to enforce the mortgage because it does not own the loan, the note, or the mortgage.  The loan was purportedly securitized and sold to a Mortgage Backed Securities Trust.  The PSA that governed that trust provided for a closing date of October

---

[1] The Court notes that each of the causes of action are alleged against all Defendants.  However, the second, third, fourth, sixth, and seventh causes of action contain no allegations that describe conduct by MERS.  Therefore, the second,  third, fourth, sixth, and seventh causes of action are alleged against BOA and BONY only, and not MERS.

4

1   30, 2007.  However, the relevant assignments were not made prior to October 30, 2007, and thus,

2   the loan was not part of the Mortgage Backed Securities Trust res.  Because the PSA was violated,

3   BONY never obtained an interest in the mortgage.  Further, the circumstances of the assignment

4   of the deed of trust are questionable.  Two assignments were made by MERS to BONY, and the

5   relevant signatures on those assignments are illegible, which indicates fraud.  Further, the

6   September assignment by MERS appears to violate the automatic bankruptcy stay.

7        *Discussion*

8        There are numerous theories that underlie the first cause of action .  Many of the same

9   theories, allegations, and arguments that were expressed in connection with the first motion to

10  dismiss are repeated in the FAC and in this motion.  Based on the new allegations in the FAC and

11  on Newman's opposition, Newman's theories are still without merit.

12       a.    PSA Violation

13       Newman again relies on violations of the PSA and New York securities law.  The Court

14  explained that numerous other district courts have rejected claims that relate to violations of a

15  PSA.  See Newman v. Bank of N.Y. Mellon, 2013 U.S. Dist. LEXIS 52487, *8 (E.D. Cal. Apr. 11,

16  2013).  The Court stated that "the alleged violation of the PSA is not a proper basis *for this or any*

17  *cause of action* in the Complaint."  Id.  There is no reason to deviate from this conclusion.[2]  Any

18  claims that are based on violation of the PSA are not viable.  See Gilbert v. Chase Home Fin.,

19  LLC, 2013 U.S. Dist. LEXIS 74772, *9-*10 (E.D. Cal. May 28, 2013) (and cases cited therein);

20  McGough v. Wells Fargo Bank, N.A., 2012 U.S. Dist. LEXIS 84327, *14 (N.D. Cal. June 18,

21  2012); Jenkins v. JP Morgan Chase Bank, N.A., 216 Cal.App.4th 497, 515 (2013).

22       b.    Assignment During Bankruptcy

23       Although not clear, it appears that Newman may again be arguing that the September 2011

24  assignment of the deed of trust from MERS to BONY is invalid because the assignment was done

26  [2]Newman has submitted a recent decision from the California Fifth District Court of Appeal.  In *Glaski v. Bank of Am., N.A.*, 218 Cal.App.4th 1079 (2013), the court held that a borrower like Newman has standing to assert a violation

27  of a PSA.  However, no courts have yet followed *Glaski* and *Glaski* is in a clear minority on the issue.  Until either the California Supreme Court, the Ninth Circuit, or other appellate courts follow *Glaski*, this Court will continue to follow

28  the majority rule.  See Toneman v. United States Bank, 2013 U.S. Dist. LEXIS 98966, *30-*31 (C.D. Cal. June 13, 2013); Jenkins, 216 Cal.App.4th at 515.

in violation of the automatic bankruptcy stay.  However, the Bankruptcy Court granted relief from

the automatic stay under 11 U.S.C. § 362(d) after reviewing the September 2011 assignment.  See

B.C. at Doc. Nos. 10, 12, 13, 26.  The Bankruptcy Court also rejected arguments that the August

2011 and September 2011 assignments violated the automatic stay as an improper collateral attack

on a final order.  See RJN Ex. B; A.P. Doc. No. 105.  All bankruptcy matters are now final, and no

appeals were taken.  Granting retrospective relief under 11 U.S.C. § 362(d) means that there is no

violation of the automatic stay.  See In re Schwartz, 954 F.2d 569, 571 (9th Cir. 1992).  That order

is final and was not appealed.  See RJN Ex. B.  The Court sees no reason why collateral estoppel,

or issue preclusion, should not apply to the Bankruptcy Court's order granting relief from the

automatic stay.  See FDIC v. Shearson-Am. Express, 996 F.2d 493, 497-99 (1st Cir. 1993).

Newman is estopped from arguing that the September 2011 assignment violated the automatic

stay.  See id.  Alternatively, Newman has not shown that the assignment of the deed of trust was

an attempt to perfect a security interest.  The security interest was already in existence and valid in

September 2011.  The September 2011 assignment perfects nothing, rather it is what it purports to

be, a mere assignment of an existing interest.  See Fed. R. Bank. Pro. 3001(e); Newman, 2013

U.S. Dist. LEXIS 52487 at *10-*11; In re Waters, 2011 WL 5508657 (Bankr. D. Alaska Mar. 15,

2011); cf. Small v. MERS, 2010 U.S. Dist. LEXIS 97135, *12-*13 (E.D. Cal. Sept. 16, 2010) (no

requirement in California law that assignments of deeds of trust must be recorded).

c.     Fraudulent Assignment

The FAC alleges that the individuals who signed the August 2011 and September 2011

assignments of the deed of trust were not Assistant Secretaries of MERS.  See FAC ¶¶ 56, 57.

The FAC further alleges that Roldan and Rodriguez had no authority from MERS to execute the

August 2011 assignment.  See id. at ¶¶ 49, 56.  In the previous motion to dismiss, the Court

explained that allegations that an individual is not an employee of MERS may call into question

the validity of an assignment of a deed of trust and/or a substitution of trustee.  See Newman, 2013

U.S. Dist. LEXIS 52487 at *15-*16.  The Court required an additional allegation that the signatory

did not have authority to sign on behalf of MERS in addition to not being an employee of MERS.

See id.  Newman's allegations now specifically allege that Roldan and Rodriguez were not

6

1    employees of MERS and did not have authority to assign the deeds of trust.  See FAC ¶¶ 49, 56.

2    However, under the circumstances of this case, these allegations create no plausible claim.

3          First, the allegations regarding Rodriguez's authority are conclusory.

4          Second, the FAC alleges that the September 2011 assignment signed by Rodriguez was

5    void because of the August 2011 assignment signed by Roldan: "And both BONY and [BOA]

6    knowingly had [Rodriguez] execute the [September 2011 assignment] fully knowing that it was a

7    void act because the August Assignment, MERS had nothing to assign."  Id.  The FAC is

8    contradictory.  On the one hand, it alleges that the August 2011 assignment assigned nothing

9    because Roldan had no authority.  On the other hand, the FAC relies on the validity of the August

10   2011 assignment to argue that the September 2011 assignment assigned nothing.

11         Third, MERS and BONY are defending this lawsuit together.  If Roldan or Rodriguez did

12   not transfer MERS's interest to BONY, then MERS would be the victim of fraud.  MERS has not

13   in any way indicated that it has been swindled out of its interest.  To the contrary, the fact that

14   both MERS and BONY are represented by the same attorney and have filed a mutual motion to

15   dismiss indicates that no fraudulent transfer occurred.  In other words, the fact that MERS and

16   BONY are together defending this suit reflects the implausibility of Newman's assertions.  There

17   is no indication that MERS has ever objected to the purported transfer of the beneficial interest to

18   BONY.  In fact, as part of their joint motion to dismiss, MERS and BONY both assert and rely on

19   the validity of the assignment from MERS to BONY.  To the extent that there may have been an

20   agency issue regarding Roldan or Rodriguez, the conduct of both MERS and BONY in this case

21   indicates ratification.  See Feldman v. BAC Home Loans Servicing, LP, 2013 Cal.App. Unpub.

22   LEXIS 5919, *43-*44 (Aug. 22, 2013);[3] Robinson v. Onewest Bank, 2011 Cal.App. Unpub.

23   LEXIS 6048, *14-*16 (Aug. 11, 2011); see also Vawter v. ReconTrust Co., N.A., 2012 U.S. Dist.

24   LEXIS 899, *8-*9 (D. Ariz. Jan. 4, 2012); Jones v. Bank of Am., N.A., 2011 U.S. Dist. LEXIS

25   72171, *2-*3 (D. Nev. July 5, 2011).

26

27

28   [3]This Court is not bound by state rules regarding unpbublished cases, and may consider unpublished cases as
     persuasive authority.  See Employers Ins. of Wausau v. Granite State Ins. Co., 330 F.3d 1214, 1220 n.8 (9t h Cir.
     2003); Altman v. HO Sports Co., 821 F.Supp.2d 1178, 1189, n.14 (E.D. Cal. 2011).

d.     Conclusion

Newman admits that this is an attempt to challenge the standing of a beneficiary to enforce the deed of trust.  California courts have recognized that the comprehensive California foreclosure scheme does not permit a general challenge to the authority of an entity to foreclose on a deed of trust, absent a specific factual basis that demonstrates no authority.  See Hinojosa v. Wells Fargo Bank, 2012 U.S. Dist. LEXIS 114001, *8-*9 (N.D. Cal. Aug. 13, 2012); Mueller v. Bank of Am., N.A., 2012 U.S. Dist. LEXIS 107684, *25 (S.D. Cal. Aug. 1, 2012); Visendi v. Bank of Am. Corp., 2012 U.S. Dist. LEXIS 87036, *9 n.4 (E.D. Cal. June 21, 2012); Brown v. U.S. Bancorp., 2012 U.S. Dist. LEXIS 26226, *8 (C.D. Cal. Feb. 27, 2012); Siliga, 219 Cal.App.4th at 82-85; Jenkins v. JPMorgan Chase Bank, N.A., 216 Cal.App.4th 497, 512-13 (2013); Gomes v. Countrywide Home Loans, Inc., 192 Cal.App.4th 1149, 1154-55 (2011).  Here, violations of the PSA are irrelevant, the bankruptcy stay was not violated, and the allegations of fraudulent assignments are insufficient and implausible.  Thus, the specific factual bases relied upon by Newman do not support viable claims.

In sum, the first cause of action fails to state a viable claim.   Because Newman has been given a previous chance to amend, and given Newman's arguments in opposition, the Court concludes that further leave to amend is not warranted.  The first cause of action will be dismissed without leave to amend.  See Mueller, 700 F.3d at 1191; Telesaurus, 623 F.3d at 1003.

2.     2nd Cause of Action – Negligence

*Defendants' Arguments*

Defendants argue that this cause of action is the same as the one previously dismissed. The FAC does not establish a duty of care.  Violations of the PSA are not breaches of a duty owed to Newman.  Further, allegations about poor communication and untimely modification decisions do not constitute negligence.  Further, the FAC does not establish any relationship with Newman beyond the role of a traditional money lender.  There is simply no duty established.  Finally, even if a duty is present, the FAC fails to identify any breach of the duty or damages suffered.  BONY was properly assigned the interest under the deed of trust.  Loan payments owed do not constitute damages, and the FAC fails to allege how any damages were caused by Defendants.

8

1     *Plaintiff's Opposition*

2         Newman argues that Defendants owe him a duty of care because of their unconventional

3 relationship with him.  BONY is a bank acting as a trustee for a trust and not the original lender.

4 The relationship is not indicative of a conventional lender-borrower relationship because BONY is

5 not receiving the benefits of the mortgage, but is instead holding the benefits for certificate

6 holders.  A duty may be owed when a lender goes beyond its role as silent lender and loan servicer

7 to offer an opportunity for a loan modification and engage in a trial plan.  Also, a bank may be

8 liable in negligence for failing to discharge its contractual duties with reasonable care.  The FAC's

9 allegations and Newman's declaration demonstrate loan modification efforts by a representative of

10 BOA.  The allegations and declaration show that BOA was more than a conventional servicer.

11     *Discussion*

12         The FAC's allegations show that this claim is premised in part on violations of the PSA.

13 "Defendants . . . breached their duty of care when they failed to follow the guidelines established

14 in the PSA requiring transfer of the Note and Deed of Trust into the CWMBS Trust by the Closing

15 Date."  FAC ¶¶ 112, 115.  This theory is not viable because violations of the PSA cannot form the

16 basis of a claim in this case.  See Gilbert, 2013 U.S. Dist. LEXIS 74772 at *9-*10; Almutarreb v.

17 Bank of N.Y. Trust Co., N.A., 2012 U.S. Dist. LEXIS 137202, *7-*8 (N.D. Cal. Sept. 24, 2012).

18         The FAC also states by reference to an attached declaration that this cause of action is

19 based in part on BOA's conduct during the loan modification process.  See FAC ¶ 113.  However,

20 "even where a lender offers a loan modification, that is nothing more than a renegotiation of loan

21 terms," which is "the same activity that occurred when the loan was first originated; the only

22 difference being that the loan is already in existence."  Morgan v. US Bank Nat'l Ass'n, 2013 U.S.

23 Dist. LEXIS 25586, *9 (N.D. Cal. Feb. 25, 2013); Armstrong v. Chevy Chase Bank, FSB, 2012

24 U.S. Dist. LEXIS 144125, *11 (N.D. Cal. Oct. 3, 2012).  Therefore, renegotiation and loan

25 modification are traditional money lending activities.  Morgan, 2013 U.S. Dist. LEXIS 25586 at

26 *9-*10; Armstrong, 2012 U.S. Dist. LEXIS 144125 at *11-*12; Settle v. World Sav. Bank, F.S.B.,

27 2012 U.S. Dist. LEXIS 4215, *24-*27 (C.D. Cal. Jan. 11, 2012).  "[A]s a general rule, a financial

28 institution owes no duty of care to a borrower when the institution's involvement in the loan

1   transaction does not exceed the scope of its conventional role as a mere lender of money."

2   Ragland v. U.S. Bank Nat'l Assn., 209 Cal.App.4th 182, 206 (2012); Nymark v. Heart Fed. Sav.

3   & Loan Assn., 231 Cal.App.3d 1089, 1096 (1991).  However, this does not mean that "a lender

4   can never be held liable for negligence in its handling of a loan transaction within its conventional

5   role as a lender of money."  See Ottolini v. Bank of Am., 2011 U.S. Dist. LEXIS 92900, *16-*17

6   (N.D. Cal. Aug. 19, 2011); Jolley v. Chase Home Finance, LLC, 213 Cal.App.4th 872, 902

7   (2013).

8          Here, Newman's declaration indicates that BOA was tardy in sending a loan modification

9   package and that BOA considered approximately three modification applications.  See FAC Ex. J

10  at ¶¶ 5, 6.  The first application was denied in September 2010 because BOA could not contact

11  Newman, although this reason is declared to be false.  See id. at ¶ 6.  In October 2010, Newman

12  was then assigned a point person, Jamie Blake-Hill, and he submitted a reapplication.  See id. at

13  ¶ 7.  The reapplication was denied because documents that had been submitted were now expired,

14  even though the delay was BOA's fault.  See id.  Newman talked again to Blake-Hill, and again

15  resubmitted his application in March 2011.  See id. at ¶ 8.  Newman received a letter from BOA

16  indicating that his application was denied because BOA could not contact Newman, which is

17  declared to be a false reason.  See id.  Newman again contacted Blake-Hill, who informed

18  Newman that some denial letters had mistakenly gone out, his case might be one of those

19  mistakes, that her information indicated that the modification had been approved and underwritten

20  as planned, that there was no indication that the application had been denied, and that Newman

21  needed to be patient and should call the Loan Modification Helpline to see if those people had

22  answers.  See id. & Attached e-mail from Blake Hill.  However, Newman did not again hear from

23  BOA about this application.  See id.  Newman did contact BOA himself several times, but was

24  only told that the application was still pending.  See id.

25         The Court is sympathetic to Newman.  His allegations indicate that BOA's conduct was

26  less than responsive, BOA did not act timely, BOA attributed either false reasons or reasons that

27  were purely attributable to BOA's own conduct to deny Newman's first two applications, and

28  BOA has apparently left his third modification application in limbo.  However, a lender is not

10

1    required to modify a loan.  See McCormick v. US Bank, N.A., 2013 U.S. Dist. LEXIS 34994, *30

2    (S.D. Cal. Mar. 12, 2013); Valle v. JP Morgan Chase Bank, N.A., 2012 U.S. Dist. LEXIS 50908,

3    *31 (S.D. Cal. Apr. 11, 2012); Cleveland v. Aurora Servs., LLC, 2011 U.S. Dist. LEXIS 55168,

4    *7 (N.D. Cal. May 24, 2011).  As one court has explained, in cases in which a duty has been

5    imposed during a loan modification process, there has generally been either successful trial

6    periods that a borrower was completing or there were promises that a modification would be

7    granted.  See Toneman, 2013 U.S. Dist. LEXIS 98996 at *46.  Neither of those characteristics are

8    present in this case.  Although Blake-Hill stated that her information indicated approval, she did

9    not promise that the loan was approved or would be approved, and in fact encouraged Newman to

10    call a different number to find an answer.  This case is closer to those cases in which a lender has

11    been subjected to poor communication and additional requests for information.  In such cases, the

12    conduct of the borrower does not create a duty for purposes of negligence.  See id. at *42-*59;

13    McCormick v. US Bank, N.A., 2013 U.S. Dist. LEXIS 34994, *22-*36 (S.D. Cal. Mar. 12, 2013);

14    Ottolini v. Bank of Am., 2011 U.S. Dist. LEXIS 92900, *4, *16-*20 (N.D. Cal. Aug. 19, 2011).

15    Therefore, the FAC does not adequately allege that BOA breached a duty of care to Newman.

16        Additionally, Defendants are correct that the FAC does not demonstrate either damages or

17    causation with respect to the loan modification efforts.   The allegations under the negligence

18    cause of action are primarily based on violations of the PSA and Defendants' efforts to enforce

19    and collect payment under the deed of trust.  The damages and causation related allegations under

20    this claim relate to these actions by Defendants, or to a failure to make payments, they do not

21    relate to the modification process.  Because they are necessary elements, see Strong v. California,

22    201 Cal.App.4th 1439, 1449 (2011), without damages and causation, there can be no negligence

23    liability even if a duty of care is violated.  See Jonkey v. Carignan Constr. Co., 139 Cal.App.4th

24    20, 26 (2006).

25        In sum, the second cause of action fails to state a viable claim.   Because Newman has been

26    given a previous chance to amend, and given Newman's arguments in opposition, the Court

27    concludes that further leave to amend is not warranted.  The second cause of action will be

28    dismissed without leave to amend.  See Mueller, 700 F.3d at 1191; Telesaurus, 623 F.3d at 1003.

1    3.    3rd Cause of Action – Quasi-Contract

2         This cause of action is based on the theory that Defendants received loan payments from

3    Newman even though they had no interest that would entitle them to the payments.  This claim

4    essentially relies on the same allegations that underlie the first cause of action.  For the same

5    reasons that the first cause of action fails, this claim also fails.[4]  See In re Schwartz, 954 F.2d at

6    572-73; Gilbert, 2013 U.S. Dist. LEXIS 74772 at *9-*10; Armstrong, 2012 U.S. Dist. LEXIS

7    144125 at *13-*15; Almutarreb, 2012 U.S. Dist. LEXIS 137202 at *7-*8; Feldman, 2013

8    Cal.App. Unpub. LEXIS 5919 at *43-*44; RJN Ex. B.

9         Because Newman has been given a previous chance to amend, and given Newman's

10   arguments in opposition, the Court concludes that further leave to amend is not warranted.  The

11   third cause of action will be dismissed without leave to amend.  See Mueller, 700 F.3d at 1191;

12   Telesaurus, 623 F.3d at 1003.

13   4.    4th Cause of Action – FDCPA

14   *Defendants' Argument*

15        Defendants argue that they are not "debt collectors," and that this cause of action is

16   premised on the same theories that were previously dismissed.  The FAC cannot establish that a

17   debt was collected under false pretenses, nor can the FAC properly allege that either BONY or

18   BOA are debt collectors.

19   *Plaintiff's Opposition*

20        Newman argues that Defendants illegally attempted to collect on his debt when they had

21   no authority to do so.  Further, given the chain of title, it is unclear when BOA took over servicing

22   the loan.  Also, the Sixth Circuit has held that foreclosure constitutes debt collection activity.

23   *Discussion*

24        As confirmed by the opposition, Newman's FDCPA claim is based on the notion that

25   _____

26   [4]The FAC also alleges that the obligations under the deed of trust and the balance on the note were fulfilled when
     Countrywide sold the note and deed of trust to an unknown entity.  See FAC ¶ 120.  This allegation is essentially an
27   argument that the securitization process extinguished the requirement for Newman to make monthly payments.  This
     is not a viable theory.  See Armstrong, 2012 U.S. Dist. LEXIS 144125 at *15; Bernardi v. JP Morgan Chase Bank,
     N.A., 2012 U.S. Dist. LEXIS 85666, *10 (N.D. Cal. June 20, 2012); Rosas v. Carnegie Mortg., LLC, 2012 U.S. Dist.
28   LEXIS 71262, *26-*27 (C.D. Cal. May 21, 2012).

1  Defendants are not the correct creditors/owners/entities to foreclose or collect money owed

2  pursuant to the note and deed of trust.  That is, this claim is based on the same theories that

3  underlie the first cause of action.  For the same reasons that the first cause of action fails, this

4  claim also fails.  Dismissal is appropriate.  <u>See</u> <u>In re Schwartz</u>, 954 F.2d at 572-73; <u>Gilbert</u>, 2013

5  U.S. Dist. LEXIS 74772 at *9-*10; <u>Almutarreb</u>, 2012 U.S. Dist. LEXIS 137202 at *7-*8;

6  <u>Feldman</u>, 2013 Cal.App. Unpub. LEXIS 5919 at *43-*44; RJN Ex. B.

7      Because Newman has been given a previous chance to amend, and given Newman's

8  arguments in opposition, the Court concludes that further leave to amend is not warranted.  The

9  fourth cause of action will be dismissed without leave to amend.  <u>See</u> <u>Mueller</u>, 700 F.3d at 1191;

10  <u>Telesaurus</u>, 623 F.3d at 1003.

11      5.      5th Cause of Action – UCL

12      *Defendants' Argument*

13      Defendants argue that this claim is nearly identical to the allegations that were previously

14  dismissed.  The FAC continues to fail to allege any wrongful conduct.  There are no facts alleged

15  that show a violation of Civil Code § 1095.  The FAC does not show that Defendants demanded

16  and accepted payments for debts that were non-existent fails because the debt is evidenced by the

17  note and the deed of trust.  The FAC alleges that Defendants reported missed payments to credit

18  reporting agencies, but admits that Newman in fact stopped making payments.

19      *Plaintiff's Opposition*

20      Newman argues that the FAC alleges that BOA engaged in unfair conduct, conduct that

21  was likely to deceive, and unlawful conduct.  BOA collected payments from him with no right to

22  do so.  The allegations that BOA and BONY violated the FDCPA show unlawful conduct.

23  Further, the fabrication of assignments in 2011 is unlawful.  Further, Defendants violated Penal

24  Code § 532(f)(a)(4).  Finally, BOA violates duties under the Homeowners' Bill of Rights Act.

25      *Legal Standard*

26      The UCL prohibits "unfair competition," which is defined to mean any "unlawful, unfair,

27  or fraudulent business act or practice."  Cal. Bus. & Prof. Code § 17200; <u>In re Tobacco II Cases</u>,

28  46 Cal.4th 298, 311 (2009).  For claims based on "unlawful" conduct, the UCL "borrows

violations of other laws and treats these violations, when committed pursuant to business activity, as unlawful practices independently actionable . . . and subject to the distinct remedies provided thereunder." Farmers Ins. Exch. v. Superior Court, 2 Cal.4th 377, 383 (1992). That is, a "defendant cannot be liable under [the UCL] for committing 'unlawful business practices' without having violated another law." Ingles v. Westwood One Broadcasting Servs., Inc., 129 Cal.App.4th 1050, 1060 (2005).

For claims based on "fraudulent conduct," the UCL "does not refer to the common law tort of fraud . . . ." Puentes v. Wells Fargo Home Mortg., Inc., 160 Cal.App.4th 638, 645 (2008). A business practice is "fraudulent" under the UCL if "members of the public are likely to be deceived." Kaldenbach v. Mutual of Omaha Life Ins. Co.,178 Cal.App.4th 830, 848 (2009). Whether a business practice is "fraudulent" is "based on the likely effect such practice would have on a reasonable consumer." McKell v. Washington Mutual, Inc., 142 Cal.App.4th 1457, 1471 (2006).

For claims based on "unfair" practices brought by consumers, there is a split of authority and at least three different methods for determining whether a business practice is "unfair": (1) the "balancing test" in which the impact on the victim is balanced against the reasons, justifications, and motives of the wrongdoer; (2) the "tethered test" whereby an allegedly violated public policy is tethered to specific constitutional, statutory, or regulatory provisions; and (3) the "section 5 test" which adopts the factors that determine whether Section 5 of the Federal Trade Commission Act has been violated, i.e. a substantial consumer injury, the injury is not outweighed by countervailing benefits to consumers or competition, and the consumers could not have reasonably avoided the injury. See In re Ins. Installment Fee Cases, 211 Cal.App.4th 1395, 1417-18 (2012); Davis v. Ford Motor Credit Co., LLC, 179 Cal.App.4th 581, 583-88 (2009).

*Discussion*

With respect to "unlawful" conduct, the FAC identifies and relies on a violation of the FDCPA, the Security First Rule, California Civil Code § 1095, and California Penal Code § 532(f)(a)(4), while the opposition focuses on the FDCPA and § 532(f)(a)(4).

As discussed above, the Complaint does not state a claim for violation of the FDCPA.

1   Therefore, the FDCPA cannot form the basis of a UCL claim in this case.

2          As to Penal Code § *532(f)*(a)(4), that law does not exist.  However, Penal Code

3   § *532f*(a)(4) does exist.  That section reads: "A person commits mortgage fraud if, with the intent

4   to defraud, the person does any of the following: . . . (4) Files or causes to be filed with the

5   recorder of any county in connection with a mortgage loan transaction any document the person

6   knows to contain a deliberate misstatement, misrepresentation, or omission."  Cal. Pen. Code

7   § 532f(a)(4).  The FAC does not explain how § 532f(a)(4) was violated, and thus fails to plausibly

8   allege a violation.  The opposition, however, indicates that the allegation is based on the 2011

9   assignments of the deed of trust.  Nevertheless, as discussed above, the allegations concerning the

10   invalidity of assignments are insufficient and implausible.  Therefore, Penal Code § 532f(a)(4)

11   cannot form the basis of a UCL claim in this case.

12          As to Civil Code § 1095, Newman does not address this statute in his opposition.  The

13   Court previously found that Newman had failed to establish that § 1095 either applied or was

14   violated.  See Newman, 2013 U.S. Dist. LEXIS 52487 at *22-*23.  Considering the absence of

15   additional allegations in the FAC, and Newman's failure to defend this allegation in his

16   opposition, the Court's prior analysis holds.  Civil Code § 1095 cannot serve as the basis for a

17   UCL claim in this case.  See id.

18          As to the Security First Rule, that concept is embodied in California Code of Civil

19   Procedure § 726(a).  Mehta v. Wells Fargo Bank, N.A., 737 F.Supp.2d 1185, 1202 (S.D. Cal.

20   2010); Security Pac. Nat'l Bank v. Wozab, 51 Cal.3d 991, 999 (1990).  The "Security First Rule"

21   requires a secured creditor to proceed against the security before enforcing the underlying debt.

22   Mehta, 737 F.Supp.2d at 1202; Wozab, 51 Cal.3d at 999.  Here, there is no explanation of how the

23   Security First Rule was violated or even implicated in this case, rather there is simply an

24   unadorned legal conclusion.  Because no violation of this rule is apparent, the Security First Rule

25   cannot serve as the basis for a UCL claim in this case.

26          With respect to "unfair" and "fraudulent" conduct, Newman's position is that the

27   Defendants do not have a valid interest in the mortgage, note, and/or deed of trust and thus, cannot

28   foreclose or collect money.  Again, the basis of this claim is the same as the basis of the first cause

15

of action.  For the same reasons that the first cause of action fails, this claim also fails.  See In re Schwartz, 954 F.2d at 572-73; Gilbert, 2013 U.S. Dist. LEXIS 74772 at *9-*10; Almutarreb, 2012 U.S. Dist. LEXIS 137202 at *7-*8; Feldman, 2013 Cal.App. Unpub. LEXIS 5919 at *43-*44; RJN Ex. B.

In sum, the fifth cause of action fails to state a viable claim.   Because Newman has been given a previous chance to amend, and given Newman's arguments in opposition, the Court concludes that further leave to amend is not warranted.  The fifth cause of action will be dismissed without leave to amend.  See Mueller, 700 F.3d at 1191; Telesaurus, 623 F.3d at 1003.

6.       6th Cause of Action – California Civil Code § 2923.5

*Defendants' Argument*

Defendants argue that the FAC does not adequately state a claim.  The allegations under this cause of action, like those under the original complaint, amount to an insufficient legal conclusion that defendants violated a statute.  Further, the boilerplate allegation is contrary to allegations that Newman contacted Defendants and applied for a loan modification, which was denied.  The loan modification discussions satisfied § 2923.5's requirements.  Also, no allegations suggest that Defendants did not exercise due diligence in attempting to contact Newman.

*Plaintiff's Opposition*

Newman argues that dismissal is inappropriate because he denies that anyone attempted to contact him.  This directly contradicts the declaration of compliance signed by Donald Smiley.  Further, if Smiley's declaration was accurate, it is contrary to the efforts of BOA employee Tina Spillman, who contacted Newman on May 25, 2013, to discuss loan modification.  Spillman had no difficulty contacting Newman, and Spillman indicated that BOA's file did not have any comments relating to foreclosure or litigation.

*Legal Standard*

A notice of default cannot be filed until 30 days after the mortgage servicer/lender has met the requirements of California Civil Code § 2923.5.  See Cal. Civ. Code § 2923.5(a); Mabry v. Superior Court, 185 Cal.App.4th 208, 221 (2010).  Section 2923.5 requires that "a mortgagee, trustee, beneficiary, or authorized agent must contact the borrower in person or by telephone in

16

1    order to assess the borrower's financial situation and explore options for the borrower to avoid

2    foreclosure or satisfy due diligence requirements before a notice of default is filed." <u>Intengan v.</u>

3    <u>BAC Home Loans Servicing LP</u>, 214 Cal.App.4th 1047 (2013); <u>Skov v. U.S. Bank National</u>

4    <u>Assn.</u>, 207 Cal. App. 4th 690, 695-96 (2012).  However, § 2923.5 does not require the lender to

5    modify the loan.  <u>Skov</u>, 207 Cal.App.4th at 695-96; <u>Mabry</u>,185 Cal.App.4th at 214.  "The only

6    remedy for noncompliance with the statute is the postponement of the foreclosure sale." <u>Skov</u>,

7    207 Cal.App.4th at 696; <u>Mabry</u>, 185 Cal.App.4th at 214.  There is no remedy for a violation of

8    § 2923.5 if the foreclosure sale has already occurred.  <u>See</u> <u>West v. JPMorgan Chase Bank, N.A.</u>,

9    214 Cal.App.4th 780, 800 n.6 (2013); <u>Stebley v. Litton Loan Servs.</u>, 202 Cal.App.4th 522, 526

10    (2011).  In order to plead a violation of § 2923.5, a plaintiff should include allegations that: (1) he

11    did not receive mail or telephone calls from the mortgage servicer/lender regarding assessing his

12    financial situation and exploring alternatives to foreclosure; (2) he was not purposefully avoiding

13    corresponding with the mortgage servicer/lender, and; (3) he could have been contacted if due

14    diligence had been exercised.  <u>Newman</u>, 2013 U.S. Dist. LEXIS 52487 at *31-*32.

15        *Discussion*

16        The FAC alleges that Newman "disputes that he was contacted by anyone associated with

17    his Note and Deed of Trust.  The Defendants . . . had [Newman's] contact information because

18    they had been dealing with him on an application for a loan modification and a representative of

19    Defendants had been making collection calls on a daily basis until he filed for bankruptcy

20    protection."  FAC ¶ 141.  Newman's declaration also indicates that he never had contact with

21    anyone from BOA regarding the notice of default, and that Blake-Hill did not discuss foreclosure

22    options.  <u>See</u> FAC Ex. J at ¶¶ 8, 18(j).  Newman's declaration and his e-mail to Blake-Hill indicate

23    that Newman has been available to be contacted, that he receives and returns messages from

24    Blake-Hill, that he communicated with BOA's collections department, and that BOA's assertions

25    that it could not contact him during the modification process were false.  <u>See</u> <u>id.</u> at ¶¶ 6, 8, 9, &

26    Attached e-mail.

27        The FAC and Newman's declaration are sufficient to show that Newman has not been

28    avoiding communication with BOA.  The declaration also indicates that Newman's financial

1   situation would have been addressed in the modification process, especially since Newman

2   submitted an updated profit and loss statement in October 2010. See id. at ¶ 7.  Further,

3   Newman's declaration shows that he was in contact with BOA and had been actively attempting to

4   obtain a loan modification.

5         Under *Mabry*, the requirement of "exploring options to avoid foreclosure" is narrowly

6   construed.  See Mabry, 185 Cal.App.4th at 232.  "Exploration must necessarily be limited to

7   merely telling the borrower of the traditional ways that foreclosure can be avoided . . . as distinct

8   from requiring the lender to engage in a process that would be functionally indistinguishable from

9   taking a loan application in the first place."  Id.  Because § 2923.5 directs a lender to refer the

10  borrower to a toll-free HUD number in order to find a HUD certified housing counseling agency,

11  the lender does not have duty to become a loan counselor.  See id.

12        Going through a loan modification application, albeit one that appears to have been

13  dysfunctional, is exploring one option against foreclosure.  As Defendants correctly point out,

14  courts have held that discussions or negotiations about, or considerations of, a loan modification

15  meet the requirements of § 2923.5.  See Hutchful v. Wells Fargo Bank, N.A., 471 Fed. Appx. 693,

16  694-95 (9th Cir. 2012); Rey v. One West Bank, FSB, 2013 U.S. Dist. LEXIS 3635, *13-*14 (E.D.

17  Cal. Jan. 9, 2013); Mueller v. Bank of Am., N.A., 2012 U.S. Dist. LEXIS 107684, *22-*23 (S.D.

18  Cal. Aug. 1, 2012); Brown v. U.S. Bancorp., 2012 U.S. Dist. LEXIS 26226, *18-*19 (C.D. Cal.

19  Feb. 27, 2012); Davenport v. Litton Loan Servicing, LP, 725 F.Supp.2d 862, 877 (N.D. Cal.

20  2010).  The Court is aware of no requirement that the negotiations or discussions result in a

21  particular outcome.  Because Newman's declaration demonstrates that he submitted at least three

22  applications for a loan modification and communicated with BOA about these applications, all

23  during a time in which he was in default, the FAC demonstrates sufficient compliance with

24  § 2923.5.[5]

25        Because the FAC and its attachments demonstrate compliance, dismissal of this cause of

26  action without leave to amend is appropriate.

27  _____

28  [5]In the Court's prior dismissal order, the Court found that Newman's allegations suggested non-compliance.
    Defendants had not cited cases such as *Hutchful* or *Davenport* in its prior motion.  Upon consideration of these cases,
    and Newman's failure to address these cases, the Court now finds that dismissal of this claim is appropriate.

1      7.     <u>7th Cause of Action – Accounting</u>

2      *Defendants' Argument*

3          Defendants argue that this cause of action was improperly included in the amended

4 complaint, and thus, should be stricken.  Alternatively, this cause of action is a repackaging of the

5 first and third causes of action, which fail.  Further, the allegations do not show that Newman is

6 entitled to an accounting.  Contrary to the FAC, there is no fiduciary relationship between

7 Newman and the Defendants, and there is nothing to indicate that there is a balance due to

8 Newman or that the accounts are so complicated that an accounting is necessary.

9      *Plaintiff's Opposition*

10          Newman argues that he has alleged viable claims that are related to the same facts that

11 form the basis of his accounting request.  Newman argues that he has stated a viable claim.

12      *Discussion*

13          The FAC alleges that BOA and BONY owe Newman a fiduciary duty, that as a result of

14 the fraudulent conduct of BOA and BONY Newman has paid them for three years even though the

15 money was not owed to BOA or BONY, and that an accounting is necessary in order for

16 Defendants to return all money paid to them.  These allegations do not state a claim.

17          A cause of action for an accounting may be brought to compel the defendant to account to

18 the plaintiff for money or property where: (1) a fiduciary relationship exists between the parties; or

19 (2) even though no fiduciary duty exists, the accounts are so complicated that an ordinary legal

20 action demanding a fixed sum is impracticable.  <u>Jolley</u>, 213 Cal.App.4th at 910.  Here, neither

21 criteria is met.  First, there are no allegations that adequately establish the existence of a fiduciary

22 relationship between Newman and BOA and BONY.  Lenders and loan servicers generally are not

23 the fiduciaries of a borrower.  See <u>Morgan</u>, 2013 U.S. Dist. LEXIS 25586 at *8; <u>Lobato v. Acqura</u>

24 <u>Loan Servs.</u>, 2012 U.S. Dist. LEXIS 23401, *14-*16 (S.D. Cal. Feb. 23, 2012); <u>Slipak v. Bank of</u>

25 <u>Am., N.A.</u>, 2011 U.S. Dist. LEXIS 131079, *6 (E.D. Cal. Nov. 14, 2011).  Second, as discussed

26 above, the FAC does not state any viable causes of action that would imply the invalidity of

27 BONY or BOA's collection of money from Newman.  Thus, the FAC's stated basis for

28 demanding an accounting is insufficient.  See <u>Union Bank v. Superior Ct.</u>, 31 Cal.App.4th 573,

593-94 (1995).  Finally, the regular payments under a deed of trust over a three year period do not

appear to be so complicated that an accounting is necessary.  See Jolley, 213 Cal.App.4th at 910.

Given the resolution of the other causes of action, dismissal of this cause of action without

leave to amend is appropriate.[6]


### CONCLUSION

Defendants have moved to dismiss each of the claims against them.  As discussed above,

the Court agrees that the FAC does not state viable causes of action.  This is the second time that

the Court has found that a complaint does not state any viable claims.  Given Newman's continued

heavy reliance on a violation of the PSA, and that this is the second dismissal under Rule12(b)(6),

further leave to amend will be denied.


### ORDER

Accordingly, IT IS HEREBY ORDERED that:

1.    Defendants' motion to dismiss (Doc. No. 25) is GRANTED;

2.    The Complaint is DISMISSED without leave to amend;

3.    Defendant's motion to strike (Doc. No. 24) is DENIED as moot; and

4.    The Clerk shall CLOSE this case.


IT IS SO ORDERED.

Dated:   October 10, 2013   _____

SENIOR  DISTRICT  JUDGE

---

[6]Additionally, the Court notes that Defendants filed a motion to strike the seventh cause of action because the Court did not grant Newman leave to add this claim.  Because the Court is dismissing the seventh cause of action as part of the 12(b)(6) motion, the motion to strike will be denied as moot.