1
2
3
4
5
6
7                    UNITED STATES DISTRICT COURT

8                   EASTERN DISTRICT OF CALIFORNIA

9

10   DAVID LEROY NEWMAN,              Case No.  1:12-cv-01629-AWI-MJS

11          Plaintiffs,              FINDINGS AND RECOMMENDATION TO
                                     DENY PLAINTIFF'S MOTION TO AMEND
12          v.
                                     (ECF NO. 67)
13   BANK OF NEW YORK MELLON,
     MORTGAGE ELECTRONIC
14   REGISTRATION SYSTEMS, INC.,     FOURTEEN (14) DAY OBJECTION
     AND BANK OF AMERICA,            DEADLINE
15
            Defendants.
16

17

18

19
            This matter is before the Court on Plaintiff's October 6, 2016, Motion for Leave to
20
     Amend and Supplement Plaintiff's First Amended Complaint after Remand. (ECF No.
21
     67.) The motion was fully briefed (ECF Nos. 67, 68, 69, and 71) and, on November 3,
22
     2016, argued and submitted.  It is ready for resolution.
23
     I.     Relevant History
24
            Plaintiff initiated this action October 1, 2012. (ECF Nos. 1 and 2.) Named
25
     Defendants were Bank of New York Mellon ("BONY"), Mortgage Electronic Recording
26
     Systems ("MERS"), and Bank of America ("BOA"). His Complaint sought damages and
27
     injunctive and declaratory relief based on causes of action arising out of quasi contract;
28

negligence; the Fair Debt Collection Practices Act ("FDCPA"), 15 USC section 1692, et seq.; and California's Unfair Competition Law ("UCL"), California Business and Professions Code Section 17200, et seq. Broadly stated, Plaintiff's claims derived from his securing a home loan with a deed of trust on the home; subsequent transfers of the loan, the security in it, and the right to payment on it; attempts by successor creditors to foreclose on the security; and Plaintiff's attempts to pay off or refinance the loan. Plaintiff sought, among other relief, to enjoin foreclosure on the home.

On December 3, 2012, Defendants moved to dismiss the Complaint. (ECF No. 8.) Their motion was granted, but with leave to amend. (ECF No. 18.) Plaintiff filed a First Amended Complaint on April 30, 2013. (ECF Nos. 19 & 20.) Defendants again moved to dismiss. (ECF No. 25.) On October 11, 2013, the District Court granted the motion to dismiss, entered judgment for Defendants, and closed the case. (ECF Nos. 42 & 43.)

Plaintiff appealed. On May 13, 2016, the 9th Circuit Court of Appeals, in an unpublished decision, affirmed in part, reversed in part, and remanded. (ECF No. 52). As to the reversal, it explained:

> 1. The district court dismissed Newman's claims for declaratory relief, quasi contract, violations of the Fair Debt Collection Practices Act, violations of California Business & Professions Code section 17200, and accounting because the court determined that a borrower like Newman has no standing to challenge a foreclosing entity's legal authority to foreclose. But while this appeal was pending, the California Supreme Court decided <u>Yvanova v. New Century Mortgage Corp.</u>, 365 P.3d 845 (Cal. 2016), which clarified that borrowers do have standing to challenge a foreclosing entity's authority to foreclose once the foreclosure has occurred. <u>Id.</u> at 860–61. And it appears that Newman's home was recently foreclosed on, bringing him within the class of people who have standing to bring these kind of claims. We therefore reverse the district court's dismissal of these claims for the district court to apply intervening California case law in the first instance.
>
> 2. As to Newman's negligence claim, the district court correctly held that a lender generally owes no duty to consider a loan modification. But while this appeal was

> pending, the California Court of Appeal decided another case, <u>Alvarez v. BAC Home Loans Servicing, L.P.</u>, 176 Cal. Rptr. 3d 304 (Cal. Ct. App. 2014), which clarified that a lender may have a duty to act reasonably once it affirmatively agrees to consider a loan modification application. <u>Id.</u> at 310. Because Newman alleges that defendants agreed to consider his loan modification request, we also remand this claim to the district court for consideration of intervening California case law in the first instance.

<u>Newman v. Bank of N.Y. Mellon Corp.</u>, 649 F. App'x 630, 631 (9th Cir. 2016); (ECF No. 52).

The Appeals Court's mandate issued June 7, 2016. (ECF No. 54.) On October 6, 2016, Plaintiff filed the motion to amend which is now before the Court. (ECF No. 67.) Defendants filed their opposition on October 17, 2016 (ECF No. 69), and Plaintiff replied to the opposition on October 27, 2016 (ECF No. 71). The parties appeared and argued their positions before the undersigned on November 3, 2016. (ECF No. 72.)

## II. Plaintiff's Motion to Amend

As reflected above, the Appeals Court reversed as to Plaintiff's claims for declaratory relief, quasi contract, violations of the FDCPA and California's UCL, accounting and negligence. It remanded those claims "to the district court for consideration of intervening California case law in the first instance." <u>Newman</u>, 649 F. App'x at 631.

### A. Plaintiff's Motion

Shortly after remand and before any other substantive case events took place, Plaintiff filed the motion now before the Court. It is entitled "MOTION FOR LEAVE TO AMEND AND SUPPLEMENT PLAINTIFF'S FIRST AMENDED COMPAINT AFTER REMAND." (ECF No. 67.) The word "SUPPLEMENT" is telling. In the motion, Plaintiff states the objective of amendment is "to raise the appropriate allegations in concert with the Ninth Circuit's ruling. In addition, the Plaintiff has added defendants who were complicit in the foreclosure of his residence . . ." and allegations against the original defendants for "their alleged continuing course of conduct which resulted in Plaintiff's

loss of his residence and a claim for a wrongful foreclosure." (ECF No. 67, p.3, lines 3-9.)

The proposed Amended Complaint purports to name as additional Defendants: Recon Trust, Inc. (also referred to at times therein as Recon Trust, N.A. or RECONTRUST), a subsidiary of Bank of America, located in Simi Valley, California ("Recon"); Old Republic Title Insurance Company, located in Chicago, Illinois ("Old Republic"); New Penn Financial LLC dba Shellpoint Mortgages Services (also referred to at times as Shellpoint Servicing), located in Greenville, South Carolina ("Penn"); Peak Foreclosure Services, in Woodland Hills, California ("Peak"), and Does 1-10. Though perhaps a gross oversimplification, but sufficient for present purposes, the allegations against the new proposed defendants are that they were involved at various points in the chain of securitization transactions which began with the deed of trust on Plaintiff's house and ultimately resulted in foreclosure upon it.

## B. Opposition

Defendants BONY, MERS, and BOA oppose the motion to amend on the grounds that: 1) the proposed amendments raise claims beyond those the Ninth Circuit directed be addressed on remand and Defendants would be prejudiced if the claims were allowed to proceed; and, 2) amendment would be futile because a) Plaintiff lacks standing to challenge the foreclosure on his home; and, b) Plaintiff has failed to allege facts essential to a cause of action for negligence.

As to the first ground, Defendants argue that the Ninth Circuit's remand order did not invite Plaintiff to amend, add new parties, or enlarge his negligence claims. It simply directed that his claims be reviewed in light of intervening, more Plaintiff-favorable, case law. To force Defendants to meet these new claims and allow Plaintiff to proceed against additional parties in this same suit would be prejudicial to the defense.

As to the second ground for objecting to amendment, Defendants cite to the principal that amendment should be denied where futile, where no set of facts in the

4

1   amendment would give rise to a valid claim. (Citing <u>Dumas v Kipp</u>, 90 F.3d 386, 393 (9th

2   Cir. 1996)). In this regard, Defendants argue that Plaintiff's proposed pleading

3   demonstrates that Plaintiff does not have standing to challenge the foreclosure based on

4   securitization because the alleged defects are merely voidable, and a borrower-victim of

5   a nonjudicial foreclosure may challenge an assignment in the chain of securitization (as

6   Plaintiff seeks to do here) only if the assignment was void. (Citing, <u>inter alia</u>, <u>Yvanova</u>,

7   365 P.3d at 848, 856-57; <u>Morgan v Aurora Loan Servs. LLC</u>, 646 Fed. Appx. 546, 550

8   (9th Cir. 2016); and <u>Saterbak v. JPMorgan Chase Bank, N.A.</u>, 199 Cal. Rptr. 3rd 790

9   (Cal. Ct. App. 2016)).

10        Further, as to negligence, Defendants argue that Plaintiff has not alleged that he

11   was qualified to receive, and would have received, a loan modification if Defendants had

12   not negligently handled his modification applications or delayed his seeking financial

13   relief elsewhere, as was alleged in <u>Alvarez</u>, the new case which prompted the Ninth's

14   remand.

15   **C.**     **Reply**

16        Plaintiff responds that he proposes adding nothing new beyond the wrongful

17   foreclosure, which <u>Yvanova</u> recognized as a valid cause of action. He argues that the

18   new defendants were "part and parcel" of the scheme to foreclose, and Plaintiff has the

19   right to proceed against them under California Civil Code Sections 2923.55, 2924.12 and

20   2914.17. He feels those sections support claims relating back to Defendants' alleged

21   acts, and that all should be joined in this one action. Additionally, Plaintiff states that,

22   while the first amended complaint "relie[d] in part on securitization issues," the proposed

23   amended and supplemental complaint no longer contains allegations that "rely on a

24   securitization argument, late-entry to the trust or otherwise." Indeed, Plaintiff appears, at

25   least at one point, to disclaim his previous arguments regarding improper securitization.

26   Instead, he now argues that the original deed of trust is void for various reasons, and

27   thus that all subsequent assignments also are void.

28

1

2 **III.    Principles Applicable to Motions to Amend**

3      The Court looks first at Defendant's first objection to amendment: that Plaintiff's

4 proposal goes far beyond anything the Ninth Circuit directed be considered on remand.

5      The facts giving rise to that objection are indisputable. There is no reason

6 whatsoever to believe that the Ninth Circuit anticipated Plaintiff would seek to broaden

7 his suit on remand. But, correspondingly, there is nothing to reflect a Ninth Circuit intent

8 to foreclose such an expansion. The Appeals Court did not say, "This case is remanded

9 only for the purpose of . . . " There appears to be nothing in the proposed amendment

10 that is inconsistent with the District Court's dismissal of Plaintiff's California Civil Code

11 section 2923.5 claim, which dismissal the Ninth Circuit upheld.  Defendant did not cite to,

12 and Court was unable to find, any authority suggesting that a remand on two of three

13 grounds foreclosed expansion of the case in ways not inconsistent with other final

14 rulings.

15      Accordingly, the Court concludes that, now that this case is back before the

16 District Court pursuant to the Ninth Circuit remand Order, it procedurally is like any other

17 case in a similar stage of litigation and the motion for amendment should be evaluated in

18 accordance with the standard rules for same.

19      Except in circumstances not present here, leave of Court is required to amend a

20 pleading. Fed. R. Civ. P. 15(a)(2). Leave to amend should be given freely, and with

21 extreme liberality, unless the opposing party makes a showing of undue prejudice, bad

22 faith, dilatory motive on the part of the moving party, or futility of the amendment.

23 Forman v. Davis, 371 U.S. 178, 182 (1962); Owens v. Kaiser Found. Health Plan, Inc.,

24 244 F.3d 708, 712 (9th Cir. 2001) (citations omitted); Lockman Found. v. Evangelical

25 Alliance Mission, 930 F.2d 764, 772 (9th Cir. 1991) (quoting Forman, 371 U.S. at 182).

26 "Absent prejudice, or a strong showing of any of the remaining Forman factors, there

27 exists a presumption under Rule 15(a) in favor of granting leave to amend." Eminence

28

Capital, LLC v. Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003) (citation omitted).

Here, the Defendants raise two grounds for denial, prejudice and futility.

The Court envisions no prejudice to Defendants if the requested amendment is allowed. Though the case is chronologically old, delay alone, particularly in the circumstances of this case, would not support denial of the motion to amend. Bowles v. Reade 198 F.3d 752, 758 (9th Cir. 1999). Despite its age, this case remains in a very early stage. Most of the time since its filing has been devoted to Defendants' motions to dismiss and appeal of the order granting dismissal and judgment for Defendants. No Answer has been filed. No Scheduling Order has issued. Plaintiff reports that no discovery has taken place. (ECF No. 71 at 3, line 23.) In short, it does not appear that allowing the proposed amendment at this point would put Defendant in any procedurally or substantively different position than if the new parties and new claims had been in the original pleading.

Leave to amend also may be denied if the proposed amendment is futile. Carrico v. City and County of San Francisco, 656 F.3d 1002, 1008 (9th Cir. 2011) (citation omitted). The test for futility is the same as for a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss, i.e., that the proposed amendment does not make out a plausible claim for relief. See Nordyke v. King, 644 F.3d 776, 788 n.12 (9th Cir. 2011), aff'd on reh'g en banc on other grounds, 681 F.3d 1041 (9th Cir. 2012).

The 9th Circuit remanded the case to determine whether new California case law opened the door for Plaintiff to proceed on his securitization-based claims and negligence claims. Defendants argue that Plaintiff's proposed amendment would be futile because these claims are not cognizable as pled. As set forth below, Defendants arguments do not precisely track the facts and arguments presented in the proposed amended complaint. The parties' arguments are addressed in turn below.

## IV.    Foreclosure-Related Claims

### A.    Remand Order

Plaintiff's first amended complaint contained several causes of action that challenged BONY's authority to enforce the mortgage on various grounds. The first of these grounds was based on alleged defects relating to the Pooling and Service Agreement ("PSA") applicable in this case. However, these claims were dismissed on the ground that Plaintiff lacked standing to bring any cause of action based on violations of the PSA. Additional claims relating to alleged improper assignment in violation of the bankruptcy stay were dismissed on the basis of collateral estoppel. Finally, claims relating to fraudulent assignment based on the actions of allegedly unauthorized "robo-signers" were dismissed as conclusory and implausible. (ECF No. 42.)

As noted, the Court of Appeals found that, because Plaintiff's home had been foreclosed upon during the pendency of the appeal of this case, Plaintiff fell within the class of people Yvanova held had standing to challenge the foreclosing entity's authority to foreclose. The Court notes that this holding addresses only the first ground for dismissal of Plaintiff's foreclosure-related claims, i.e., Plaintiff's standing. Nothing in the Ninth Circuit's remand order purports to disturb the Court's prior conclusions dismissing without leave to amend the claims based on violations of the bankruptcy stay or unauthorized actions of "robo-signers." To the extent Plaintiff intends to raise such claims in his proposed amended and supplemental complaint, these claims are barred by the Court's prior dismissal order (ECF No. 42) and are not addressed herein.

Furthermore, there appears to be some question whether Plaintiff's proposed amended complaint implicates the standing issue articulated by Yvanova and by the Ninth Circuit's remand order. Defendants' primary argument against allowing the amendment is that Plaintiff's claims regarding improper securitization allege voidable, rather than void assignments of the security of his loan, and thus he has no standing under Yvanova. Defendants' arguments go to the heart of the matter that was remanded

1    to this Court.

2         Plaintiff contends, however, that the proposed amended and supplemental

3    complaint "does not contain allegations that rely on a securitization argument, late-entry

4    to the trust or otherwise." (ECF No. 71 at 5.) A review of the proposed amended and

5    supplemental complaint reflects that Plaintiff is no longer relying on violations of the PSA

6    or late entry into the trust. That is to say, Plaintiff appears to have abandoned the

7    securitization arguments that formed the basis for his claim in the first amended

8    complaint and the Ninth Circuit's remand order. As best the Court can tell, Plaintiff now

9    argues that the event which rendered the foreclosure invalid occurred at the first stage in

10   the chain of title, not from the assignments which took place after the closing on the

11   original loan transaction. (ECF No. 71 at 6-8.) According to Plaintiff, this initial defect left

12   none of the defendants with any valid interest in Plaintiff's home. (Id.)

13        At oral argument on the motion, the parties disputed whether Plaintiff's proposed

14   claims were premised on securitization, and even whether they were subject to the

15   principles set out in Yvanova. Because Plaintiff's claims are far from clear, and because

16   the Ninth Circuit remanded expressly for consideration of whether Plaintiff's claims are

17   cognizable under Yvanova, the Court begins its analysis with Yvanova.

18        **B.    Yvanova**

19        Prior to the California Supreme Court's decision in Yvanova, California courts

20   were split on the issue of whether a borrower had standing to challenge alleged

21   improprieties in the assignment of a deed of trust. Compare Jenkins v. JP Morgan Chase

22   Bank, N.A., 216 Cal. App. 4th 497, 514-15 (2013) (borrower is an unrelated third party to

23   the assignment and has no standing to enforce or challenge it) with Glaski v. Bank of

24   America, 218 Cal. App. 4th 1079, 1094-95 (2013) (borrower had standing to challenge

25   foreclosure on the basis that assignments were void).

26        In Yvanova, the Court went to some length to draw, and explain, the distinction

27   between void and voidable assignments in such cases, and ultimately authorized claims

28

based on void, but not voidable, assignments. 62 Cal. 4th at 929-40. The court recognized a borrower's standing to challenge a foreclosure sale conducted by one who had no authority to conduct it, even where the borrower was not party to the assignment that allegedly deprived the assignee of authority to foreclose: "A homeowner who has been foreclosed on by one with no right to do so has suffered an injurious invasion of his or her legal rights at the foreclosing entity's hands. No more is required for standing to sue." Id. at 939 (citing Angelucci v. Century Supper Club, 41 Cal. 4th 160, 175 (2007).

Since only the original lender, its assignee or someone acting on behalf of one of them may direct the trustee to foreclose, "[i]f a purported assignment necessary to the chain by which the foreclosing entity claims that power is absolutely void, meaning of no legal force or effect whatsoever, the foreclosing entity has acted without legal authority by pursuing a trustee's sale, and such an unauthorized sale constitutes a wrongful foreclosure." Id. at 935 (citations omitted).

The California Supreme Court relied on Glaski and the reasoning of "several federal court decisions" to support the proposition that a borrower has standing to challenge such an assignment as void, though not as voidable.[1] Id. 930-31 (citing Culhane v Aurora Loan Servs. of Nebraska, 708 F.3d. 282 (1st Cir. 2013) and Reinagel v. Deutsche Bank Nat. Trust Co. 735 F.3d 220 (5th Cir. 2013)). The Court reasoned that where the alleged defect in assignment rendered it merely voidable at the election of one of the parties to it, but otherwise effective to pass legal title, the borrower had no standing to challenge the assignment. Id at 932. In such circumstances,

> the power to ratify or avoid the transaction lies solely with the parties to the assignment; the transaction is not void unless and until one of the parties takes steps to make it so. A borrower who challenges a foreclosure on the ground that an assignment to the foreclosing party bore defects rendering it

---
[1] Although some federal decisions held to the contrary, the Yvanova court found those decisions unpersuasive. Id. at 940 (citing Khan v. ReconTrust Co. , 81 F. Supp. 3d 867 (N.D. Cal. 2015) and Flores v. EMC Mort. Co., 997 F. Supp. 2d 1088 (E.D. Cal. 2014). There is no dispute that California law controls and that Yvanova has settled this issue.

voidable could thus be said to assert an interest belonging solely to the parties to the assignment rather than to herself.

Id. at 936.

The holding in Yvanova can be distilled quite simply as follows: a borrower who has suffered a nonjudicial foreclosure has standing to sue for wrongful foreclosure based on an allegedly void assignment. However, the court stopped well short of determining whether particular conduct or defects actually rendered an assignment void or merely voidable. Indeed, the court "express[ed] no opinion" on what facts might show a void assignment. Id. at 931, 943. Thus, this Court must look to other law to determine whether the claims at issue here point to a void or voidable assignment.

### C. Plaintiff's Allegations

As best the Court can tell, Plaintiff proposes to support his foreclosure-related claims with the following factual allegations.

First, Plaintiff alleges that the deed of trust was recorded on November 22, 2006, but the loan was not funded until November 28, 2006. (ECF No. 67 at 14.) Thus, he contends that he did not receive his consideration at the time he became liable on the Note and Deed of Trust. (ECF No. 71 at 6-7.) He contends that this delayed funding resulted in a deed of trust that "secured nothing" and is therefore void. In support, he cites California Insurance Code § 12413.1(j) and 12 C.F.R. § 229. (Id.)

Second, Plaintiff alleges that, because the funding checklist listed an investor, an un-named investor was the actual funder of the loan, and table-funded the loan after the deed of trust was recorded. (ECF No. 67 at 23; No. 71 at 7.) According to Plaintiff, because the actual lender was unknown to Plaintiff at the time Plaintiff signed the promissory note and deed of trust, the loan contract was not "consummated." In support, he cites Jackson v. Grant, 876 F.2d 764 (9th Cir. 1989). (ECF No. 71 at 7.)

Third, Plaintiff alleges that his initial loan payment to Decision One Mortgage LLC is not reflected on his payment history. Plaintiff contends that Decision One Mortgage LLC thus did not collect his loan payment, but rather collected that amount as a fee for

loan origination. He contends that such conduct was predatory under the Truth in Lending Act. He also seems to argue that Decision One was merely a conduit for an unnamed investor and thus could not transfer any equitable interest in the note to any other party, so the indorsement by Decision One and all subsequent indorsements are void. (ECF No. 67 at 14-15; No. 71 at 7.) Also as a result, Plaintiff had a right to rescind under the Truth in Lending Act, and did in fact serve a notice of rescission on BONY on March 7, 2015. (ECF No. 67 at 23.)

Plaintiff surmises that all of these defects resulted in there being no sale or transaction at all; thus all subsequent assignments also are void because they merely ratified an event that never happened. In short, the Defendant holders of the security had nothing to foreclose on or assign. What they assigned had no legal existence.

As stated, Defendants have not addressed these arguments, choosing to instead attack the allegations contained in the operative complaint regarding securitization defects as being voidable, rather than void. Nonetheless, as discussed below, even the most cursory review of the materials cited by Plaintiff demonstrates that the transaction at issue here is not void. Thus, Plaintiff fails to state a basis for challenging Defendants' authority to foreclose on the loan.

### D.    Discussion

The Court begins with general principles of contract law by noting that void contracts typical involve circumstances where "one party was an infant, or where the contract was induced by fraud, mistake, or duress, or where breach of a warranty or other promise justifies the aggrieved party in putting an end to the contract." Restatement (Second) of Contracts § 7 (1981). For example, deeds of trust have been declared void where they are procured through a "document switch fraud" amounting to fraud in the execution, LaChapelle v. Hansen McCoy Investments, LLC, No. E060825, 2015 WL 8060750, at *7-8 (Cal. Ct. App. Dec. 7, 2015), as modified on denial of reh'g (Jan. 5, 2016), or where the deed of trust was a forgery, La Jolla Grp. II v. Bruce, 211

Cal. App. 4th 461, 478 (Cal. Ct. App. 2012).

### 1.  Delayed Funding

Plaintiff first suggests that the delayed funding of his loan rendered the loan void under California Insurance Code § 12413.1(j) and 12 C.F.R. part 229. California Insurance Code § 12413.1 is California's good funds law, and it governs the disbursement of funds from an escrow account. Subsection (j) provides, "Nothing in this section shall be deemed to prohibit the recordation of documents prior to the time funds are available for disbursement with respect to a transaction provided the parties to the transaction consent in writing prior thereto." This provision does not suggest that delayed funding voids the transaction, whether or not it is authorized in writing. To the contrary, the law expressly addresses the effect of violations: title insurance companies, controlled escrow companies, and underwritten title companies may be held liable for intentional violations that do not result from bona fide errors. California Insurance Code § 12413.1(i). This express remedial structure suggests that delayed funding does not render a deed of trust void. Furthermore, Plaintiff does not cite, not does the Court find, case law to support such a proposition. Nor does Plaintiff set forth any argument to suggest how or why delayed funding voids the transaction.

Plaintiff cites generally to 12 C.F.R. part 229, but does not point to which specific provision of the code was violated. Regardless, however, violations of this part are subject to administrative enforcement mechanisms, 12 C.F.R. § 229.3, or civil liability, 12 C.F.R. § 229,21. Neither provision suggests that violations of the part render a transaction void.

### 2.  Unknown Investor

Plaintiff next alleges that the deed of trust was void because an unnamed investor is listed on the funding checklist. At least one California court has rejected a similar argument. Torres v. U.S. Bank Nat'l Ass'n, No. G051406, 2016 WL 3571014, at *7–8 (Cal. Ct. App. June 23, 2016), review denied (Sept. 21, 2016) (rejecting argument that

inability to precisely identify the lender rendered a deed of trust void, particularly where the borrowers "did not allege they were subjected to competing claims for payment on the loan or that they did not know who to pay"). Furthermore, regardless of what was presented on the funding checklist[2], both the Note and the Deed of Trust list the lender as Decision One, (ECF No. 67 at 57, 64), it was to Decision One that Plaintiff made his first payment, and it was Decision One that first assigned the deed of trust (ECF No. 67 at 82).

As another variation on the argument that Decision One is not the true lender, Plaintiff claims that he was not credited for his initial payment to Decision One and thus Decision One must have collected this money as a fee, rather than a payment on the loan. However, all of the documents attached to the complaint state that Plaintiff's initial payment was due January 1, 2007, the date he allegedly paid Decision One. Decision One's failure to credit the payment, to the extent it did so, does not render the deed of trust void.

## C.    Truth in Lending Act

Plaintiff appears to argue that the note and deed of trust are void because of violations of the Truth in Lending Act ("TILA") and Regulation Z. As an initial matter, the Court notes that Plaintiff has not brought a claim for rescission or damages under TILA or Regulation Z. To the extent Plaintiff argues that TILA violations rendered the note and deed of trust void for purposes of the <u>Yvanova</u> analysis, he is incorrect. Under TILA, if required disclosures are not made, the consumer may rescind. 15 U.S.C. § 1635(a). However, the borrower must return the money or property when he exercises the right to rescind. 15 U.S.C. § 1635(b). Regulation Z, 12 C.F.R. § 226.23, implements these provisions. Under these provisions, a security interest "becomes void" only when certain conditions are met; it is not voided simply by serving a notice of rescission. <u>Yamamoto v. Bank of N.Y.</u>, 329 F.3d 1167, 1172 (9th Cir. 2003). The structure of the statute and

---

[2] It is far from clear that the funding checklist identifies an undisclosed investor as the true lender. (<u>See</u> ECF No. 67 at 105.)

regulations squarely create a system under which a security interest is voidable, rather than void.

Furthermore, Plaintiff's reliance on <u>Jackson v. Grant</u>, 876 F.2d 764 (9th Cir. 1989), <u>amended and superseded by</u> 890 F.2d 118 (9th Cir. 1989), is misplaced. That case involved a question of when a loan is "consummated" under TILA for purposes of triggering various notification requirements. Furthermore, the note and deed of trust at issue in <u>Jackson</u> did not identify <u>any</u> lender. Indeed, the lender was not known at that time and the loan was not yet guaranteed. The borrower subsequently executed a note and deed of trust (both of which listed the lender) that triggered the TILA notification requirements. Here, Plaintiff has not brought a TILA claim and the question of when a loan is consummated under TILA is not at issue. Furthermore, unlike in <u>Jackson</u>, the note and deed of trust clearly identified the lender on Plaintiff's loan. His contention that Decision One was not the true lender appears to be based solely on speculation and is not supported by the documents attached as Exhibits to the complaint for the reasons set forth above.

### 4.    Conclusion

Plaintiff has not presented facts to suggest that the deed of trust or subsequent assignments are void. He thus does not have standing under <u>Yvanova</u> to pursue claims challenging securitization or Defendants' right to foreclose. Leave to amend to add such claims would be futile and should be denied. <u>See</u> <u>Destfino v. Reiswig</u>, 630 F.3d 952, 958-59 (9th Cir. 2011) (holding that further leave to amend need not be granted when plaintiffs have had multiple opportunities to amend).

### V.    Negligence Claim

The Ninth Circuit remanded Plaintiff's negligence claim "for consideration of intervening California case law in the first instance." In particular, the Ninth Circuit noted that, while the appeal was pending, the California Court of Appeal decided <u>Alvarez v. BAC Home Loans Servicing, L.P.</u>, 176 Cal. Rptr. 3d 304 (Cal. Ct. App. 2014), which the Ninth Circuit

described as "clarif[ying] that a lender may have a duty to act reasonably once it affirmatively agrees to consider a loan modification application." <u>Newman</u>, 649 F. App'x at 631.

On the instant motion, Defendants argue that Plaintiff's negligence claim does not meet the standard articulated by <u>Alvarez</u> and, in any event, Plaintiff cannot adequately plead damages in relation to this claim. Plaintiff responds only that arguments as to this claim are "better reserved for litigation involving factual determinations" and should not be resolved at the pleading stage.

### A.     California Negligence Law

Under California law, a negligence claim has three primary elements: (1) the defendant owed the plaintiff a duty of care, (2) the defendant breached that duty, and (3) the breach proximately caused the plaintiff's damages or injuries. <u>Lueras v. BAC Home Loans Servicing, L.P.</u>, 221 Cal. App. 4th 49, 62 (2013) (citation omitted). "Whether a duty of care exists is a question of law to be determined on a case-by-case basis." <u>Id.</u> In determining whether a duty of care exists, the following six factors are considered: "the extent to which the transaction was intended to affect the plaintiff, the foreseeability of harm to him, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, and the policy of preventing future harm." <u>Biakanja v. Irving</u>, 49 Cal. 2d 647, 650 (1958). "[A]s a general rule, a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money." <u>Lueras</u>, 221 Cal. App. 4th at 63 (quoting <u>Nymark v. Heart Fed. Savings & Loan Assn.</u>, 231 Cal. App.3d 1089, 1096 (Cal. Ct. App. 1991)).

Although the <u>Alvarez</u> court concluded that a lender owed a duty of care to particular borrowers in the loan modification process, the Court notes that <u>Alvarez</u> is by no means considered a definitive statement on California law. Indeed, California courts,

and federal courts interpreting California law, are "divided as to whether a lender owes a duty of care during a loan modification application process." Cornejo v. Ocwen Loan Servicing, LLC, 151 F. Supp. 3d 1102, 1116 (E.D. Cal. 2015) (comparing Lueras, 221 Cal. App. 4th at 67 (finding no duty) with Alvarez, 228 Cal. App. 4th at 948 (finding duty of care where lender agrees to consider loan modification application)).

In Lueras, the plaintiff alleged that the defendant financial institutions negligently failed to offer him a loan modification. The Court of Appeal for the Fourth District concluded that a residential lender owes no "common law duty of care to offer, consider, or approve a loan modification, or to explore and offer foreclosure alternatives." 221 Cal. App. 4th at 67. The court determined that "a loan modification is the renegotiation of loan terms, which falls squarely within the scope of a lending institution's conventional role as a lender of money." Id. Furthermore, the court concluded that the Biakanja factors did not support the imposition of a duty of care in the loan modification context: "If the modification was necessary due to the borrower's inability to repay the loan, the borrower's harm, suffered from denial of a loan modification, would not be closely connected to the lender's conduct. If the lender did not place the borrower in a position creating a need for a loan modification, then no moral blame would be attached to the lender's conduct." Id. The court thus concluded that the complaint could not, as a matter of law, state a negligence claim based on the failure to offer a loan modification.

Approximately nine months after Lueras was decided, the Court of Appeal for the First District decided Alvarez. Therein, the plaintiffs alleged that the defendant financial institutions negligently reviewed their loan modification applications after having agreed to consider them. 228 Cal. App. 4th at 944-45. Specifically, the defendants allegedly did not review the applications in a timely manner, foreclosed on the property while the applications were pending, and mishandled the applications by relying on incorrect information. Id. at 945.

The Alvarez court concluded that the Biakanja factors weighed in favor of

imposing a duty of care on a lender that undertakes to review a loan for potential modification:

> The transaction was intended to affect the plaintiffs and it was entirely foreseeable that failing to timely and carefully process the loan modification applications could result in significant harm to the applicants. Plaintiffs allege that the mishandling of their applications "caus[ed] them to lose title to their home, deterrence from seeking other remedies to address their default and/or unaffordable mortgage payments, damage to their credit, additional income tax liability, costs and expenses incurred to prevent or fight foreclosure, and other damages." As stated in Garcia, "Although there was no guarantee the modification would be granted had the loan been properly processed, the mishandling of the documents deprived Plaintiff of the possibility of obtaining the requested relief." Should plaintiffs fail to prove that they would have obtained a loan modification absent defendants' negligence, damages will be affected accordingly, but not necessarily eliminated.

Id. at 948-49 (citing Garcia v. Ocwen Loan Servicing, LLC, No. C 10-0290 PVT, 2010 WL 1881098, at *2-4 (N.D. Cal. May 10, 2010)).

Additionally, the court noted that the defendants' conduct was particularly blameworthy in light of the plaintiffs' relative lack of bargaining power in the loan modification process. Id. at 949. Of particular concern to the court was the process of "dual tracking," in which financial institutions simultaneously pursue foreclosure while evaluating a borrower's loan modification application. Id. at 950-951. This process of dual tracking has been significantly limited through the California Homeowner Bill of Rights ("HBOR"). See Cal. Civ. Code §§ 2923.6, 2924.18. Although the HBOR was not in effect at the time of the conduct at issue in Alvarez, the Alvarez court nonetheless concluded that the duties imposed thereunder "fall well within the duty to use reasonable care in the processing of a loan modification." Id. at 951.

Based on this reasoning, the court determined that the plaintiffs had sufficiently alleged a breach of the duty of care. Additionally, the court concluded that they had "alleged that the improper handling of their applications deprived them of the opportunity to obtain loan modifications, which they allege they were qualified to receive and would

18

have received had their applications been properly reviewed, and alternatively, that the delay in processing deprived them of the opportunity to seek relief elsewhere." Id. Accordingly, they were permitted to proceed on their negligence claim.

It is notable that an increasing number of courts that have considered the split in authority reflected in Lueras and Alvarez have declined to follow Alvarez, holding instead that there is no duty of care in the loan modification process. E.g., Marques v. Wells Fargo Bank, N.A., No. 16-cv-03973-YGR, 2016 WL 5942329, at *7-8 (N.D. Cal. Oct. 13, 2016) (discussing split and following Lueras); Griffin v. Green Tree Servicing, LLC, CV-14-09408-MMM, 2015 WL 10059081, at *14 (C.D. Cal. Oct. 1, 2015) (discussing the split in authority, finding no duty of care, and stating that "there is no principled way to distinguish the process of applying for an original loan from the process of applying for a loan modification; both involve activities clearly within the conventional role of mere lenders of money"); Garcia v. PNC Mortg., No. 14-cv-3543-PJH, 2015 WL 5461563, at *3 (N.D. Cal. Sept. 16, 2015) (agreeing with Lueras in finding that loan modifications fall under the "provision of ordinary financial services"); Cohen v. Capital One, N.A., No. CV 14-6319 PSG (EX), 2015 WL 12746217, at *10 (C.D. Cal. June 1, 2015) (concluding that loan modification falls within the lenders "conventional role as a lender of money"); Carbajal v. Wells Fargo Bank, N.A., No. CV 14-7851-PSG, 2015 WL 2454054, at *6 (C.D. Cal. Apr. 10, 2015) (noting that cases following Alvarez have "side-stepped . . . financial lending negligence jurisprudence" and concluding that lenders owe no duty of care when considering loan modification applications).

The Ninth Circuit has, in an unpublished opinion, acknowledged the lack of clarity on this issue. Anderson v. Deutsche Bank Nat. Trust Co. Americas, 649 F. App'x 550, 552 & n.1 (9th Cir. 2016), cert. denied sub nom. Anderson v. Aurora Loan Servs., LLC, 137 S. Ct. 496, 196 L. Ed. 2d 404 (2016). Moreover, since Alvarez, the Ninth Circuit has repeatedly relied on Lueras to find there is no duty of care in the loan modification process. Id. at 552 ("[A]pplication of the Biakanja factors does not support imposition of

such a duty where, as here, the borrowers' negligence claims are based on allegations of delays in the processing of their loan modification applications."); Badame v. J.P. Morgan Chase Bank, N.A., 641 F. App'x 707, 709-10 (9th Cir. 2016) (following Lueras and finding no duty of care); Deschaine v. IndyMac Mortg. Servs., 617 F. App'x 690, 692 (9th Cir. 2015) ("The district court did not err in dismissing Deschaine's negligence claim, because IndyMac did not have 'a common law duty of care to offer, consider, or approve a loan modification, or to explore and to offer [Deschaine] foreclosure alternatives[.]'").

Cases that have followed Alvarez have focused primarily on the pitfalls of dual tracking and lenders' misrepresentations regarding the status of a loan modification application. In Martinez v. Flagstar Bank, FSB, No. 2:15-cv-01934-KJM-CKD, 2016 WL 3906810, at *8 (E.D. Cal. July 19, 2016), the Court held, in essence, that a bank always owes a duty of care "'to a borrower not to make material misrepresentations about the status of an application for a loan modification' and that a borrower would foreseeably be harmed 'by an inaccurate or untimely communication . . . about the status of a loan modification application.'"[3] Of significance to the court were the following facts: the bank "induced [the borrowers] to default, told them they qualified, repeatedly lost or purposely misplaced their application materials, and all the while assured them no foreclosure sale would go forward while it considered their application. Then it completed a foreclosure sale despite their pending application." Id.

### B.    Discussion

The Court acknowledges the pitfalls inherent in the process of dual tracking. Nonetheless, the Court finds the Lueras line of cases more persuasive, particularly in light of the several Ninth Circuit unpublished cases declining to find a duty of care in these circumstances. The Court simply cannot distinguish the loan modification process

---

[3] The Lueras court similarly concluded that a lender owes a borrower a duty to not make negligent misrepresentations of fact, such as material misrepresentations about the status of an application for a loan modification. 221 Cal. App. 4th at 68. Such allegations could support a claim for negligent misrepresentation. This is distinct, however, from a claim that a modification application was negligently handled or considered. The Martinez line of cases appears to conflate the two claims.

from a lender's conventional role as a lender of money. See, e.g., Lueras, 221 Cal. App. 4th at 67.

Moreover, even assuming that Alvarez controls, the Court finds that the following facts alleged in the complaint weigh heavily against finding a duty of care. First, although Plaintiff implies that he was induced to forego loan payments in order to pursue a loan modification, he also alleges that he ceased payments on his mortgage in December 2009 because "he could no longer make his full payment." (ECF No. 67 at 34.) Thus, the bank did not induce Plaintiff to default, and nothing in the proposed complaint suggests that Plaintiff could have, or would have, continued to make payments had his modification not been under consideration. See Martinez, 2016 WL 3906810, at *8. Defendants' conduct therefore is only minimally connected, if at all, to any injury suffered by Plaintiff with regard to deficient loan modification procedures. See Biakanja, 49 Cal. 2d at 650 (considering "the closeness of the connection between the defendant's conduct and the injury suffered").

Second, according to the proposed complaint, Plaintiff was informed early in 2010, mere months after first submitting his application, that his modification request had not been received. He subsequently was informed on multiple occasions – twice in 2010 and once in early 2011, that his modification request was denied. The Court finds it difficult to conclude that any moral blame should be attached to such conduct. See Biakanja, 49 Cal. 2d at 650 (considering "the moral blame attached to the defendant's conduct"). Moreover, Plaintiff does not allege that these representations encouraged him to forego other alternatives for curing his mortgage default or altering his mortgage obligations – indeed such allegations would be implausible based on the facts presented. See Alvarez, 228 Cal. App. 4th at 948-49.

Similarly, while Plaintiff claims that he was verbally informed in early 2011 that his modification had been approved and that the prior denial letter may have been a mistake, he was informed in subsequent calls that the application was in process. At the

same time, Plaintiff continued to receive collection calls up to ten times per day. These collection calls did not stop until Plaintiff filed for bankruptcy. While these communications certainly reflect mixed messages, and potentially attach a degree of moral blame to Defendants' conduct, Plaintiff once again fails to allege that this conduct led him to forego other alternatives.

Thus, even if the Court could conclude that these factors weighed in favor of finding a duty of care, Plaintiff cannot proceed on this claim because he fails to allege any damages caused by Defendants' conduct. Plaintiff does not allege that he was qualified to receive a loan modification or that he was induced through the modification process to forego other alternatives for curing his mortgage deficiencies, avoiding bankruptcy, maintaining title to his home, etc. Absent such allegations, his damages would appear to be comprised merely of the time and energy spent pursuing a modification. However, such damages are not cognizable. Lueras, 221 Cal. App. 4th at 79 ("Time and effort spent assembling materials for an application to modify a loan is the sort of nominal damage subject to the maxim de minimis non curat lex – i.e., the law does not concern itself with trifles." (Citation omitted)). Plaintiff does not identify any other potential damages and the Court will not speculate in this regard.

In sum, the Court concludes that leave to amend would be futile because Plaintiff's negligence claim is not cognizable as pled.

**VI.    Conclusion and Recommendation**

Based on the foregoing, it is HEREBY RECOMMENDED that Plaintiff's motion to amend and supplement the complaint be DENIED as futile. See Carrico v. City and County of San Francisco, 656 F.3d 1002, 1008 (9th Cir. 2011) (citation omitted).

The findings and recommendation will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1). Within fourteen (14) days after being served with the findings and recommendation, the parties may file written objections with the Court. The document should be captioned

"Objections to Magistrate Judge's Findings and Recommendation." A party may respond to another party's objections by filing a response within fourteen (14) days after being served with a copy of that party's objections. The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   May 5, 2017       /s/ *Michael J. Seng*
                         UNITED STATES MAGISTRATE JUDGE