# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID LEROY NEWMAN,<br><br>  Plaintiff,<br><br>  v.<br><br>THE BANK OF NEW YORK MELLON f/k/a The Bank of New York, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., BANK OF AMERICA, N.A., and DOES 1-10 inclusive,<br><br>  Defendants. | CASE NO. 1:12-CV-1629 AWI MJS<br><br>**ORDER REGARDING FINDINGS AND RECOMMENDATION AND ORDER ON PLAINTIFF'S MOTION TO AMEND**<br><br>(Doc. Nos. 67, 77) |

This is a deed of trust related case brought by Plaintiff David Newman ("Newman") against Defendants Bank of New York Mellon ("BONY"), Mortgage Electronic Recording Systems ("MERS"), and Bank of America ("BOA"). Following a remand from the Ninth Circuit, Newman filed a motion to amend his complaint on October 6, 2016. Newman included a Proposed Amended Complaint ("PAC"). Shortly after an unsuccessful settlement conference, the Magistrate Judge issued a Findings and Recommendation ("F&R") to deny the motion to amend. Newman filed objections, and Defendants filed a reply. After reviewing the matter, the Court will adopt part of the F&R and grant part of the motion to amend.


**BACKGROUND**

From the First Amended Complaint and its attached exhibits, Newman obtained a loan in November 2006 on property located in Modesto, California. The loan was secured by a deed of trust. The deed of trust identifies the lender as Decision One Mortgage Company ("DOMC"), the trustee as Fidelity National Title, and MERS as the beneficiary and as the nominee of the lender and its assigns and successors.

After one payment, Newman was informed that Countrywide Home Loans ("Countrywide") was going to be a servicer of the loan. In January 2007, Newman began making payments to Countrywide.

In mid-2008, when attempting to make a payment to Countrywide, Newman was redirected to the BOA home loans website. Newman later contacted BOA about restructuring the mortgage, but was told that he did not qualify because he was not behind on his payments.

In December 2009, Newman stopped making mortgage payments. Plaintiff contacted BOA regarding loan modifications from 2010 through 2011, but to no avail.

On August 22, 2011, MERS assigned its beneficial interest in the deed of trust and the note to BONY. The assignment is signed by Luis Roldan as an Assistant Secretary of MERS.

On August 23, 2011, Newman filed for Chapter 7 Bankruptcy.

On September 14, 2011, MERS assigned its beneficial interest in the deed of trust to BONY. The assignment is signed by Cecilia Rodriguez as an Assistant Secretary of MERS.

On October 19, 2011, BONY filed a motion for relief from the automatic bankruptcy stay. See United States Bankruptcy Court for the Eastern District of California, Case No. 11-92999-E-7 ("Bankruptcy Docket") at Doc. Nos. 10, 12, 13, 26.[1] As part of that motion, Defendants filed a copy of the September 2011 assignment and a copy of Newman's note, which indicated that Countrywide had obtained the note from DOMC. Despite objections that the assignment by MERS appeared to be fraudulent, in November 2011 the Bankruptcy Court granted the motion.

On December 5, 2011, Newman filed an adversary proceeding against BONY and MERS.

On June 4, 2012, Newman received a notice of default, signed by Recontrust Co. ("Recontrust"), who had been substituted as the deed of trust trustee on June 1, 2012.

On August 29, 2012, the Bankruptcy Court dismissed Newman's adversary proceeding due to lack of standing.

A foreclosure sale was later set for October 10, 2012.

On October 1, 2012, Newman filed this lawsuit. Newman alleged claims for declaratory

---

[1] The Court takes judicial notice of the Bankruptcy Court for the Eastern District of California's docket in Newman's Chapter 7 bankruptcy proceedings. See Fed. R. Evid. 201; Bias v. Moynihan, 508 F.3d 1212, 1225 (9th Cir. 2007).

relief, quasi-contract, California Civil Code § 2923.5, the Fair Debt Collection Practices Act (15 U.S.C. § 1692 et. seq.) ("FDCPA"),California Business & Professions Code § 17200 ("UCL"), and negligence.

On October 11, 2013, the Court granted a Rule 12(b)(6) motion to dismiss and dismissed a first amended complaint with prejudice. See Doc. No. 42. With respect to the claim for declaratory relief, the Court found that several theories were underlying the claim: violation of the Pooling and Servicing Agreement ("PSA"), improper assignment during the automatic bankruptcy stay, and fraudulent assignment by "robo-signers." The Court dismissed the request for declaratory relief because none of the three theories had merit. First, Newman did not have standing to assert a violation of the PSA. Second, based on a decision by the Bankruptcy Court, Newman was collaterally estopped from arguing that the 2011 assignment of his deed of trust violated the bankruptcy stay, and there was no indication that the transfer was an attempt to perfect a security interest. Third, the allegations of robo-signing were conclusory, contradictory to other allegations, and implausible because MERS and BONY were represented by the same counsel and had filed a joint motion to dismiss that relied on the validity of the various assignments. With respect to the negligence claim, the Court held that BOA violated no duty of care and that the allegations did not adequately indicate causation or damages. With respect to the quasi-contract and FDCPA claims, the Court held that the claims failed for the same reasons that the declaratory relief cause of action failed. With respect to the UCL claim, the Court held that there were no violations of the FDCPA, Penal Code § 532f(a)(4), and California Code of Civil Procedure §§ 726(a) and 1095 for purposes of "unlawful UCL", and that the "fraudulent UCL" and "unfair UCL" failed for the same reasons that the declaratory relief claim failed. With respect to the Civil Code § 2923.5 claim, the Court held that there was no relief available because a foreclosure on the property had already occurred. Finally, the Court held that no cause of action was stated for an accounting because the FAC failed to establish either a fiduciary duty or accounts that were so complicated that an ordinary legal action demanding a fixed sum was impractical.

Newman appealed to the Ninth Circuit, and the Ninth Circuit affirmed in part, reversed in part, and remanded the matter. Newman v. Bank of N.Y. Mellon, 639 F. App'x 630, 631 (9th Cir. 2016). The Ninth Circuit affirmed the dismissal of the Civil Code § 2923.5 claims. With respect to Newman's other claims, the Ninth Circuit held:

> 1. The district court dismissed Newman's claims for declaratory relief, quasi contract, violations of the Fair Debt Collection Practices Act, violations of California Business & Professions Code section 17200, and accounting because the court determined that a borrower like Newman has no standing to challenge a foreclosing entity's legal authority to foreclose. But while this appeal was pending, the California Supreme Court decided Yvanova v. New Century Mortgage Corp., 365 P.3d 845 (Cal. 2016), which clarified that borrowers do have standing to challenge a foreclosing entity's authority to foreclose once the foreclosure has occurred. Id. at 860-61. And it appears that Newman's home was recently foreclosed on, bringing him within the class of people who have standing to bring these kind of claims. We therefore reverse the district court's dismissal of these claims *for the district court to apply intervening California case law in the first instance.*
>
> 2. As to Newman's negligence claim, the district court correctly held that a lender generally owes no duty to consider a loan modification. But while this appeal was pending, the California Court of Appeal decided another case, Alvarez v. BAC Home Loans Servicing, L.P., 176 Cal.Rptr.3d 304 (Cal. Ct. App. 2014), which clarified that a lender may have a duty to act reasonably once it affirmatively agrees to consider a loan modification application. Id. at 310. Because Newman alleges that defendants agreed to consider his loan modification request, we also remand this claim to the district court *for consideration of intervening California case law in the first instance.*

Newman, 649 F. App'x at 631 (emphasis added).

After remand, Newman filed a motion to amend his complaint. The Magistrate Judge issued the F&R and recommended denying the motion. The F&R found that *Yvanova* only addressed standing, so that the remainder of the Court's prior relevant analyses remained in place. In analyzing the remaining allegations under *Yvanova*, the F&R concluded that Newman's allegations regarding California Insurance Code § 12413.1, 12 C.F.R. part 229, and listing an unnamed investor on the funding checklist would not result in a void transaction, and any reliance on the federal Truth In Lending Act ("TILA") was improper because the TILA provisions create a system under which a security interest is voidable. With respect to the negligence claim, the F&R found that *Alvarez* did not represent settled law, and many courts have rejected *Alvarez* in favor of *Lueras v. BAC Home Loans Servicing, L.P.*, 221 Cal.App.4th 49 (2013), which held there is no cause of action for negligently handling or considering loan modification applications. The F&R

4

found that *Lueras* was more persuasive, especially in light of recent unpublished Ninth Circuit cases. However, assuming that *Alvarez* controls, the F&R found that the facts alleged weighed against a finding of a duty of care because the FAC alleged that Newman could no longer make his full payment in December 2009, Newman was told twice that his application was denied, and although he was told at one time that his application was approved, there are no allegations that the mixed messages caused him to forego other alternatives. Finally, the F&R also found that Newman failed to allege any damages caused by BOA's conduct.

Newman filed timely objections to the F&R, and argued that the PAC stated viable claims. Defendants' filed a reply to Newman's opposition in which they argued that the F&R correctly concluded that amendment would be futile.

## **LEGAL FRAMEWORK**

1. Review of Findings & Recommendation

A district court may refer pretrial issues to a magistrate judge under 28 U.S.C. § 636(b)(1). See Dawson v. Marshall, 561 F.3d 930, 932 (9th Cir. 2009). If a magistrate judge issues a findings and recommendation pursuant to § 636(b)(1), and if there is a proper objection, the district court shall "make a *de novo* determination of those portions of the . . . findings and recommendation to which objection is made." 28 U.S.C. § 636(b)(1)(C); Dawson, 561 F.3d at 932. "*De novo* review means that the reviewing court 'does no defer to the lower court's ruling but freely consider[s] the matter anew, as if no decision had been rendered below.'" Dawson, 561 F.3d at 933 (quoting United States v. Silverman, 861 F.2d 571, 576 (9th Cir. 1988)).

2. Federal Rule of Civil Procedure 15

Rule 15(a)(2) instructs courts to "freely give leave [to amend] when justice so requires." Fed. R. Civ. Pro. 15(a)(2); C.F. v. Capistrano Unified Sch. Dist., 654 F.3d 975, 985 (9th Cir. 2011); Zucco Partners, LLC v. Digimarc Ltd., 552 F.3d 981, 1007 (9th Cir. 2009). "This policy is to be applied with extreme liberality." C.F., 654 F.3d at 985; Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048, 1051 (9th Cir. 2003). "This liberality in granting leave to amend is not dependent on whether the amendment will add causes of action or parties." DCD Programs, Ltd.

v. Leighton, 833 F.2d 183, 186 (9th Cir. 1987). However, a court may deny leave to amend "due to undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party . . ., and futility of amendment." Zucco, 552 F.3d at 1007. These considerations are not given equal weight, and delay by itself is insufficient to deny leave to amend. DCD Programs, 833 F.2d at 186. Prejudice to the defendant is the most important factor, but amendment may be denied upon a sufficiently strong showing of other factors. See Eminence Capital, 316 F.3d at 1052. "Absent prejudice, or a strong showing on any of the remaining [considerations], there exists a presumption under Rule 15(a) in favor of granting leave to amend." C.F., 654 F.3d at 985.

## PLAINTIFF'S MOTION & OBJECTIONS

The Ninth Circuit remanded this case for the Court to do two things: (1) apply *Yvanova* to Newman's claims regarding wrongful foreclosure; and (2) apply *Alvarez* to Newman's claims of negligence.

    1.    <u>Impact of *Yvanova*</u>

In *Yvanova*, the California Supreme Court answered the question of whether the "borrower on a home loan secured by a deed of trust may base an action for wrongful foreclosure on allegations a purported assignment of the note and deed of trust to the foreclosing party bore defects rendering the assignment void." Yvanova v. New Century Mortg. Corp., 62 Cal.4th 919, 923 (2016). The answer to this question was that, "because in a nonjudicial foreclosure only the original beneficiary of a deed of trust or its assignee or agent may direct the trustee to sell the property, an allegation that the assignment was void, and not merely voidable at the behest of the parties to the assignment, will support an action for wrongful foreclosure." Id. *Yvanova* explained that its holding was "narrow," and established "only that a borrower who has suffered a nonjudicial foreclosure does not lack standing to sue for wrongful foreclosure based on an allegedly void assignment merely because he or she was in default on the loan and was not a party to the challenged assignment." Id. at 924. A void contract or transaction is "without legal effect" and is a "mere nullity." Id. at 929. A voidable contract or transaction is one that may be declared

6

void, but is not void in itself, and may be subject to ratification by the parties. See id. at 930.

Accordingly, in order for *Yvanova* to have an impact on Newman's case, Newman must be able to allege facts that demonstrate that the assignment of the note and deed of trust to BONY is void. Newman's proposed amended complaint, as clarified in part by Newman's reply in support of his motion and his objections to the F&R, identifies several defects that allegedly render the assignment to BONY void. The Court will address each contention separately.

### a. Loan Funding After Recordation Of The Deed Of Trust

Newman contends that the loan was funded about one month after recordation of the deed of trust and that he did not agree to recordation prior to funding the loan. See PAC ¶¶ 26, 27; Doc. No. 71 at 6:15-24. Newman argues that recording the deed of trust prior to funding and without his consent violated California Insurance Code § 12413.1(j), and 12 C.F.R. part 229. See id. Newman argues that because the recorded deed of trust secured a note with no funds, the deed of trust at the time of recording secured nothing. See Doc. no. 71 at 6:15-24. Because the deed of trust secured nothing at the time of closing, the Defendants have nothing to foreclose on and no lien to enforce. See id. Newman's arguments that the deed of trust secures nothing are directly tied to Insurance Code § 12413.1(j).[2] See id.

California Insurance Code § 12413.1(j) reads: "No title insurance company, controlled escrow company, or underwritten title company shall disburse funds from an escrow account until the day established by the following: . . . (j) Nothing in this section shall be deemed to prohibit the recordation of documents prior to the time funds are available for disbursement with respect to a transaction provided the parties to the transaction consent in writing prior thereto." The F&R found that there was an insufficient basis to conclude that any violation of § 12413.1(j) would result in a void transaction or assignment. See Doc. No. 77 at 13:3-22.

After review, the Court agrees with the F&R. Insurance Code § 12413.1 is directed at and regulates the behavior of title insurance companies, controlled title escrow companies, and underwritten title companies. There is nothing about § 12413.1 that addresses the effect of a

---

[2] The PAC does not reference 12 C.F.R. part 229, rather that provision is cited in Newman's reply memorandum, which was filed prior to, and considered by, the F&R. See Doc. No. 71. Newman's objections to the F&R do not mention 12 C.F.R. part 229, nor does the PAC. Therefore, the Court will not consider 12 C.F.R. part 229.

7

violation of § 12413.1(j) on the transaction between a borrower and seller. While § 12413.1(i) discusses defenses for a violation of § 12413.1, that section explains that "title companies" are not liable if the violation was unintentional or resulted from a "bona fide error." See Cal. Ins. Code § 12413.1(i). By implication, "title companies" are liable for violations of § 12413.1 for intentional conduct that is not the result of a "bona fide error." See id. There are no provisions of § 12413.1 that extend liability or defenses to entities other than escrow and title companies. Further, the F&R noted that Newman did not cite any authority for the proposition that a § 12413.1(j) violation would render the note and deed of trust between Newman and DOMC void. Despite this observation, no authority was cited as part of Newman's objections, and the Court has found none.

In the absence of contrary authority, and considering the targeted group who is directly regulated by § 12413.1, Newman has not sufficiently demonstrated that a violation of § 12413.1(j) would render the note and deed of trust, or any subsequent assignments thereof, void for purposes *Yvanova*.

### b. Table-Funding[3]

Newman contends that his loan was table-funded because the loan was funded about a month after the deed of trust was recorded, DOMC endorsed the note in blank and "without recourse," the Fee Sheet to Fidelity stated that funds would not be wired unless the closing package was received the day after closing, and the Funding Checksheet indicates that the investor is "core-5 yr IO." Newman argues that the first line of the note states that the borrower promises to pay "in return for the loan I have received," even though he did not receive the loan at recording. Rather, an unknown investor other than DOMC funded the loan after recordation without Newman's knowledge. Newman argues that these facts demonstrate that a loan with DOMC was not consummated under California law, and there is no contractual obligation between himself and the unknown investor, per *Jackson v. Grant*, 890 F.2d 118 (9th Cir. 1989), because "no contractual loan obligation exists until both lender and borrower are identified."

As the Court understands, Newman's argument is essentially that the loan transaction

---

[3] "In a table-funded loan, the originator closes the loan in its own name, but is acting as an intermediary for the true lender, which assumes the financial risk of the transaction." Easter v. American W. Fin., 381 F.3d 948, 955 (9th Cir. 2004).

failed because DOMC was only a conduit and the true lender was never disclosed. This argument, including its reliance on *Jackson*,[4] is not new and has been consistently rejected. See Silas v. Argent Mortg. Co., 2017 U.S. Dist. LEXIS 115324, *30 (E.D. Cal. July 24, 2017) ("The use of a third party lender to fund a loan does not preclude the consummation of a valid contract between the named lender and the borrower."); Marquez v. Select Portfolio Servicing, Inc., 2017 U.S. Dist. LEXIS 38239, *7-*8 (N.D. Cal. Mar. 16, 2017) ("[C]courts that have considered arguments identical to Plaintiff's — that a borrower's mortgage loan documents allegedly fail to identify the borrower's 'true lender' and therefore, pursuant to *Jackson*, the mortgage loan was never consummated — have unanimously rejected it."); Tyshkevich v. Wells Fargo Bank, N.A., 2016 U.S. Dist. LEXIS 70779, *7 (E.D. Cal. May 31, 2016); Ghalehtak v. FNBN I, LLC, 2016 U.S. Dist. LEXIS 61347, *10 (N.D. Cal. May 6, 2016) ("[T]he contract is consummated so long as a lender is identified, even if it is not the ultimate funding source."); Mohanna v. Bank of Am., N.A., 2016 U.S. Dist. LEXIS 58291, *14 (N.D. Cal. May 2, 2016) ("[D]istrict courts have unanimously found that a lender's use of an undisclosed third party to complete a secured transaction is insufficient to preclude consummation under TILA."); Major v. Imortgage.com, Inc., 2016 U.S. Dist. LEXIS 15225, *7 (C.D. Cal. Feb. 8, 2016) (dismissing TILA claim despite plaintiff's argument that "because the true 'source of the funds' has yet to be identified and revealed to plaintiff . . . Plaintiff's loan transaction has not been consummated."); Sotanski v. HSBC Bank USA, Nat'l Ass'n, 2015 U.S. Dist. LEXIS 106859, *17-*18 (N.D. Cal. Aug. 12, 2015); Ramos v. U.S. Bank, 2012 U.S. Dist. LEXIS 131564 at *3 n.1 (S.D. Cal. Sept. 14, 2012) (dismissing TILA claim where "a lender was plainly identified . . . and the loan was consummated regardless of how or by whom the lender was ultimately funded."); Allen v. Bank of N.Y. Mellon, 2016 Cal. App. Unpub. LEXIS 7086, *34-*36 (2016).[5] Many of these cases distinguish *Jackson* on the basis that no lender of any kind was identified in that contract. E.g. Marquez, 2017 U.S.

---

[4] Citing California Civil Code § 1558, *Jackson* held that "[i]t is essential not only that the parties to the contract *exist*, but that it is possible to identify them." Jackson, 890 F.2d at 121 (emphasis in original).

[5] The Court may city unpublished California appellate decisions as persuasive authority. See Employers Ins. Co. of Wausau v. Granite State Ins. Co., 330 F.3d 1214, 1220 n.8 (9th Cir. 2003); Robles v. Agreserves, Inc., 158 F.Supp.3d 952, 976 n.12 (E.D. Cal. 2016).

Dist. LEXIS 38239 at *8; Ramos, 2012 U.S. Dist. LEXIS 131564 at *3 n.1. Here, as the F&R correctly points out, both the note and the deed of trust expressly identify DOMC as the "lender." See Doc. No. 67 at pp. 57 (¶ 1), 64 (¶ (C)). Because DOMC is identified as the "lender" in both the deed of trust and the note, Newman has not sufficiently demonstrated a "consummation" problem or a basis for concluding that the note and deed of trust are void for purposes of *Yvanova* because the "true lender" was not identified. See Silas, 2017 U.S. Dist. LEXIS 115324 at *30; Marquez, 2017 U.S. Dist. LEXIS 38239 at *7-*8; Tyshkevich, 2016 U.S. Dist. LEXIS 70779 at *7; Ghalehtak, 2016 U.S. Dist. LEXIS 61347 at *10; Mohanna, 2016 U.S. Dist. LEXIS 58291 at *14; Major, 2016 U.S. Dist. LEXIS 15225 at *7; Sotanski, 2015 U.S. Dist. LEXIS 106859 at *17-*18; Ramos, 2012 U.S. Dist. LEXIS 131564 at *3 n.1; Allen, 2016 Cal. App. Unpub. LEXIS 7086 at *34-*36.

     c.  MERS Assignments

  From the objections, Newman contends that the August 2011 assignment from MERS to BONY was invalid because MERS was no longer DOMC's nominee, the assignment was "robo-signed" by Luis Roldan (who was not actually an "assistant secretary" for MERS), MERS did not occupy the address listed on the assignment, and MERS did not receive any value or consideration and did not have a beneficial interest in the note to assign. Newman also contends that the September 2011 assignment is invalid for essentially the same reasons, except that the September Assignment was "robo-signed" by Cecilia Rodriguez instead of Luis Roldan, the September Assignment does not have an address for MERS, and the September Assignment only assigned the deed of trust without the note. Newman also notes that DOMC was no longer in business in 2007. After review, the Court does not find merit to these arguments and allegations.

  First, as discussed above, the Court determined that the allegations of "robo-signing" were implausible because MERS and BONY were represented by the same counsel and had filed a joint motion to dismiss that relied on the validity of the various assignments. The Court continues to stand by this holding. Additionally, irrespective of the plausibility of the allegation, a "robo-signed" document or assignment is voidable, not void. See Dahnken v. Wells Fargo Bank, NA, 2017 U.S. App. LEXIS 13001, *3 (9th Cir. July 19, 2017); Barcarse v. Central Mortg. Co., 661 F.

App'x 905, 906 (9th Cir. 2016); Mendoza v. JPMorgan Chase Bank, 6 Cal.App.5th 802, 820 (2016); see also Allen v. Select Portfolio Servicing, Inc., 2017 Cal.App.Unpub. LEXIS 5538, *14 (2017); Shetty v. Veriprise Processing Sols., 2017 Cal.App.Unpub. 2139, *10 (2017). Therefore, allegations of "robo-signing" are insufficient to establish standing through *Yvanova*.

Second, the Court accepts that DOMC ceased doing business in 2007. However, per the deed of trust, MERS was the nominee of DOMC and DOMC's successors and assigns, and Newman agreed that MERS had the authority "to exercise any or all of [the lender's] interests." See Doc. No. 67 at pp. 64 (¶ E), 66. That DOMC may have ceased doing business or become defunct does not affect MERS's ability to assign the deed of trust as nominee, even if the successor is not identified in the assignment. See Ghuman v. Wells Fargo Bank, N.A., 989 F.Supp.2d 994, 1001 (E.D. Cal. 2013); Ochoa v. Mtc Fin., 2015 Cal. App. Unpub. LEXIS 6275, *11-*12 (2015); Herrera v. Federal National Mortgage Assn., 205 Cal.App.4th 1495, 1505 (2012).[6]

Third, the deed of trust expressly states that MERS is the beneficiary of the deed of trust as DOMC's (and its successors and assigns) nominee. See ECF No. 67 at pp. 64-66. "MERS, as nominal beneficiary, has the power to assign its interest under a deed of trust." Saterbak v. JPMorgan Chase Bank, N.A., 245 Cal.App.4th 808, 816 (2016); Herrera, 205 Cal.App.4th at 1498; see also Shetty, 2017 Cal.App.Unpub. Lexis 3876 at *12. To the extent that Newman is challenging MERS's ability to assign the deed of trust, the challenge is improper. Lam v. JPMorgan Chase Bank, N.A., 605 F. App'x 600, 603 (9th Cir. 2015).

Fourth, the August 2011 assignment purports to transfer the note and the deed of trust. See PAC Ex. C. Also, although it does not purport to transfer the note, under a section entitled "important notice" the September 2011 assignment states: "Note After having been recorded, the Assignment should be kept with the Note and Deed of Trust hereby assigned." See id. at Ex. D. This suggests that the note was in the possession of BONY. Consistent with that suggestion, in connection with the bankruptcy proceedings, BONY submitted a copy of the September 2011 assignment and a copy of Newman's note to the Bankruptcy Court and represented to the

---

[6] Overruled on other grounds by Yvanova, 62 Cal.4th at 939 n.13.

11

1  Bankruptcy Court that BONY was in possession of the note and entitled to enforce it. See
2  Bankruptcy Docket at Doc. Nos. 10, 13; PAC ¶ 49. Thus, BONY demonstrated possession of both
3  the note and the deed of trust.[7] Assignments of the note commonly are not recorded, and there is
4  no indication that BONY obtained the note through any void transactions. See Fontenot v. Wells
5  Fargo Bank, N.A., 198 Cal.App.4th 256, 267, 271--72 (2011)[8] (explaining that the MERS system
6  is designed so that recordation of a note transfer is not necessary, that assignments of debt are
7  commonly not recorded in the public record, and that there were no allegations that the defendant
8  never received an assignment of the note in any manner).

Fifth, Newman cites no authority for the proposition that either an incorrect address for MERS or no address for MERS in the Assignments renders the Assignments void.

Finally, Newman does not explain why no value was received for the assignment, nor does he cite authority that explains what effect the failure to receive value for the assignments would be. More to the point, there is no authority for the proposition that the assignments between MERS and BONY would be void because MERS did not actually receive "value" for the assignments from BONY. Additionally, the fact that MERS and BONY are appearing in this case through the same counsel and each rely on MERS's assignments to BONY suggests that value was received for the transaction.

In sum, Newman has not demonstrated that MERS's assignments are void.

### d. TILA Violations

Newman contends *inter alia* that rescission is effective upon the borrower sending notice to the lender. Once notice is given, the lender has 20 days in which to contest rescission. Because the rescission was not contested, the Court has no jurisdiction to consider the claim of rescission. The significance of any purported TILA violation is unclear, as the PAC contains no TILA cause of action. To the extent that Newman is contending that he successfully rescinded the note and deed of trust and thus, no entity has the right to foreclose, the Court cannot agree.

---

[7] The Court notes that the Bankruptcy Court found that BONY possessed the note and had standing to enforce the note. See Bankruptcy Docket Doc. No. 25.

[8] Overruled on other grounds by Yvanova, 62 Cal.4th at 939 n.13.

To be sure, under TILA a lender has the right to rescind if certain disclosures are not made, and the effect of rescission is to render the security interest void. See 15 U.S.C. §§ 1635(a), (b). However, a borrower has 3 years in which to rescind a loan if certain disclosures are not made. See 15 U.S.C. § 1635(f). The 3 year limitations period is a statute of repose that is not subject to tolling. See McOmie-Gray v. Bank of Am. Home Loans, 667 F.3d 1325, 1329 (9th Cir. 2012); Miguel v. County Funding Corp., 309 F.3d 1161, 1164 (9th Cir. 2002). Here, the note and deed of trust were signed by Newman in 2006. Newman did not attempt to rescind the loan until March 2015, well beyond the 3 year rescission period. See PAC ¶ 62. Newman cites no authority for the proposition that invoking the right to rescind after the expiration of the 3 year statute of repose has any legal effective. Therefore, to the extent that Newman relies on TILA rescission to support any wrongful foreclosure claims, such reliance is misplaced. Cf. Obeng-Amponsah v. Chase Home Fin., LLC, 624 F. App'x 459, 461 (9th Cir. 2015) (affirming dismissal of TILA claim because the plaintiff failed to send the lender a notice of rescission within the 3 year statute of repose).

e. Conclusion

The F&R found that no "wrongful foreclosure" claims were pled because Newman did not adequately allege that the initial mortgage transaction is void or that BONY's interest in the note and deed of trust are void. As discussed above, the Court reaches the same conclusion. As void transactions have not been adequately alleged or identified, *Yvanova* does not apply to this case.

2. Impact of *Alvarez v. BAC Home Loans Servicing, LP, 228 Cal.App.4th 941 (2014)*[9]

The issue in *Alvarez* was whether the financial institution could be liable for negligently handling the borrowers' application for a loan modification. See Alvarez, 228 Cal.App.4th at 944. The complaint in that case alleged that the defendants breached a duty to exercise reasonable care in processing and reviewing the application for loan modification by: (1) failing to review the

---

[9] The F&R discussed *Lueras v. BAC Home Loans Servicing, L.P.*, 221 Cal.App.4th 49, 63 (2013), a case that pre-dates *Alvarez*, and indicated that a number of cases, including several unpublished decisions from the Ninth Circuit, have cited to and relied upon *Lueras* instead of *Alvarez*. The F&R also found *Lueras* to be more persuasive. The F&R raises a significant issue, and the Ninth Circuit itself has recognized a split in California courts between *Alvarez* and *Lueras*. See 1617 Westcliff LLC v. Wells Fargo Bank N.A., 686 F. App'x 411, 416 (9th Cir. 2017). Nevertheless, the Ninth Circuit remanded this case in order for the Court to apply *Alvarez* in the first instance. Newman, 649 F. App'x at 631. The rule of mandate requires the Court to follow those instructions. See Stacy v. Colvin, 825 F.3d 563, 567-68 (9th Cir. 2016). Therefore, the Court respectfully declines to adopt the portion of the F&R that applies *Lueras*.

application in a timely manner; (2) foreclosing on the plaintiffs' properties while they were considering a modification; and (3) mishandling the applications by relying on incorrect information. See id. at 945. *Alvarez* recognized the general rule that financial institutions owe no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money. See id. However, *Alvarez* agreed with *Jolley v. Chase Home Finance, LLC*, 213 Cal.App.4th 872 (2013) that the general rule did not mean that a lender never owes a duty of care to a borrower, and whether a lender does owe a duty depends on balancing the six *Biakanja* factors.[10] See id. at 945-46. *Alvarez* applied the *Biakanja* factors and found that the defendants did owe the plaintiffs a duty of reasonable care in processing and reviewing the application for a loan modification. See Alvarez, 228 Cal.App.4th at 948-50. *Alvarez* found that: the loan modification was clearly intended to affect the plaintiffs; failing to timely and carefully processing the applications could result in significant harm to the plaintiffs; the mishandling caused plaintiffs to sustain injury in the form of losing title to their home, deterring them from seeking other remedies to address default/unaffordable mortgage payments, damage to credit, costs and expenses to fight foreclosure, additional income tax liability, and other damages; there was moral blame because borrowers lack bargaining power, there are conflicts of interest in the modern loan servicing industry, and the defendants were engaged in "dual tracking" (which is now prohibited by the Civil Code); and the policy of preventing future harm (as reflected in the California Homeowner Bill of Rights) favored imposing a duty of care on defendants. See id. *Alvarez* noted that, should "plaintiffs fail to prove that they would have obtained a loan modification absent defendants' negligence, damages will be affected accordingly, but not necessarily eliminated." Id. at 949.

        a.      Relevant Allegations In The PAC[11]

The PAC alleges that Newman suffered a severe decrease in income in the middle of 2009

---

[10] The six non-exhaustive *Biakanja* factors are: (1) the extent to which the transaction was intended to affect the plaintiff, (2) the foreseeability of harm to the plaintiff, (3) the degree of certainty that the plaintiff suffered injury, (4) the closeness of the connection between the defendant's conduct and the injury suffered, (5) the moral blame attached to the defendant's conduct, and (6) the policy of preventing future harm. Biakanja v. Irving, 49 Cal.2d 647, 650 (1958).

[11] The relevant allegations are Paragraphs 108 through 113, and 118 through 120.

14

due to the collapse of the Modesto real estate market. Newman contacted BOA and was told that he did not qualify for a loan modification because he was not 90 days behind in his payments. In December 2009, Newman could not make his full payments. In order to qualify for a loan modification, Newman stopped making payments. In March 2010, Newman called BOA and requested a loan modification package. BOA informed him that he would receive a package in 7 to 10 days. Newman did not receive the package. In late May or early June 2010, Newman contacted BOA and was told that BOA did not have the request. Newman eventually received three loan modification packages all at once. Newman immediately completed a package and sent it back to BOA. Newman did not hear from BOA until August or September 2010 when he was told that his application was denied. Newman asked why he was denied, and BOA informed him that he was denied because they had been unsuccessfully attempting to contact him. Newman denies that BOA had been attempting to contact him. BOA assigned Newman a contact person, Jamie Blake-Hill. After discussion with Blake-Hill, Newman submitted another loan modification application. In October 2010, BOA requested an updated "profit loss statement," which Newman e-mailed the next day. Newman's second application was denied because of expired documents, but it was BOA's fault for the delay that caused the documents to expire. Newman contacted Blake-Hill again and resubmitted the application. In March 2011, BOA sent a letter stating that the latest application was denied because BOA could not contact Newman. Newman called Blake-Hill and she said that a lot of denial letters were sent out by mistake, that his modification was approved and being underwritten, and that he just needed to be patient. Newman has called BOA several times since and gotten the same answer that the modification was being processed. During the time Newman was attempting to obtain a loan modification, BOA's collection division continued to call Newman around 10 times per day, and Newman would explain that he was waiting for a modification. BOA's collections division said modifications were handled in a different department. The collection calls did not stop until Newman filed for bankruptcy in October 2011. Newman alleges that he overpaid in interest, had his credit and credit score severely damaged, was unable to refinance out of the loan, buy another property, or sell his home, and eventually lost his home.

1  b. Discussion

Relying on *Alvarez*, a number of courts have held that, once a lender decides to consider a loan modification application, the lender owes the borrower a duty to exercise reasonable care in the review of the medication application. E.g. Sheng v. Select Portfolio Servicing, Inc., 2015 U.S. Dist. LEXIS 97077, *12-*13 (E.D. Cal. July 24, 2015); Johnson v. PNC Mortgage, LLC, 80 F.Supp.3d 980, 985 (N.D. Cal. 2015); Rau v. PNC Bank, 2017 Cal. App. Unpub. LEXIS 6088, *7 (2017). Under this authority, the application of *Alvarez* is as simple as determining whether the BOA accepted for consideration a loan modification application from Newman. Because the PAC alleges that BOA did accept several modification applications, BOA had a duty to use reasonable care in reviewing those applications. See id.

The Court would reach the same result by apply examining the *Biakanja* factors through the lens of *Alvarez*.

The first factor, the extent to which the transaction was intended to affect Newman, weighs in favor of a duty. The transaction was clearly intended to affect Newman, and in particular, his ability to keep his home. See Alvarez, 228 Cal.App.4th at 948; see also Daniels v. Select Portfolio Servicing, Inc., 246 Cal.App.4th 1150, 1182 (2016).

The second factor, the foreseeability of harm to Newman, also weighs in favor of a duty. Several harms are readily foreseeable if there is negligence in the review of a loan modification application, the most obvious being the loss of the home. See Alvarez, 228 Cal.App.4th at 948; see also Daniels, 246 Cal.App.4th at 1182.

The third factor, the degree of certainty that Newman suffered injury, appears to favor a duty. In *Alvarez*, the plaintiffs alleged that the mishandling of the modification application caused them to "lose title to their home, deterrence from seeking other remedies to address their default and/or unaffordable mortgage payments, damage to their credit, additional income tax liability, costs and expenses to prevent and/or fight foreclosure, and other damages." Alvarez, 228 Cal.App.4th at 948-49. Similarly, in *Daniels*, the following damages were found to be sufficient for the third factor: " damage to their credit; forgone remedies; and increased arrears, interest, penalties, and fees by [Bank of America] practice of stringing them along for years regarding the

availability of a loan modification." Daniels, 246 Cal.App.4th at 1182. As noted above, the PAC alleges that Newman overpaid in interest, had his credit and credit score severely damaged, was unable to refinance out of the loan, buy another property, or sell his home, and eventually lost his home. See PAC ¶¶ 118-120. These damages are sufficiently similar to *Alvarez* and *Daniels*.

The fourth factor, the closeness of the connection between defendants' conduct and Newman's injuries, is not clear. Although similar damages to those that have been found sufficient in other cases are alleged in the PAC, there are no allegations that clearly link those damages to BOA's conduct during the loan modification process. For example, the relevant damages are alleged under a section of the PAC entitled "Plaintiff Suffered Prejudice And Continues To Suffer Significant Monetary, Legal, And Equitable Damages." See PAC p. 33. However, the damages are linked to Defendants' conduct generally. There are no allegations in this section that tie the relevant damages specifically and expressly to any conduct by BOA during the loan modification process. Similarly, under the second cause of action for negligence, there are a number of alleged breaches of duty by all Defendants, but the allegations regarding loan modification are comprised of about two lines. See id. at ¶ 141 ("BANA also breached their duty of care when they negligently handled Plaintiff's attempts to modify his loan."). There are no other allegations under the second cause of action that deal with the loan modification process, much less any discussion or linkage between damages and the loan modification process. Given the generality of the allegations, this factor is weighs neutral to slightly against a duty.

The fifth factor, the moral blame attached to the defendant's conduct, appears to favor a duty of care. It is true that there is no indication in the PAC that Defendants were responsible for Newman's need for a loan modification in 2009. Cf. Daniels, 246 Cal.App.4th at 1183. However, the PAC indicates at least some moral blame to BOA during the application process. The PAC indicates that Newman was told that he had to be 90 days behind in his payments to qualify for a loan modification,[12] and BOA twice denied Newman's application for false reasons. Further, as

---

[12] It is unknown what modification programs and criteria actually existed in 2009. Theoretically it is possible that the statement from BOA was correct. However, at this time, the statement is highly suspect. Cf. Daniels, 246 Cal.App.4th at 1183 (noting under the fourth *Biakanja* factors that the defendant advised the plaintiff to become delinquent in his loan).

17

*Alvarez* indicates, Newman's ability to protect his own interests during the loan modification process is "practically nil." Alvarez, 228 Cal.App.4th at 949. Therefore, this factor weighs in favor of a duty of care.

The sixth factor, the policy of preventing future harm, weighs in favor of a duty. As explained by *Alvarez*, the California Homeowners Bill of Rights reflects policy considerations that are directly relevant to the alleged conduct of BOA in this case. See id.

In sum, five of the *Biakanja* factors support imposition of a duty and one factor weighs neutral to slightly against a duty (given the allegations as currently pled). Therefore, the *Biakanja* factors favor imposing a duty of care. See Daniels, 246 Cal.App.4t h at 1183 (finding *Biakanja* factor weighed in favor of a duty of care when four factors supported imposition of a duty and two factors were neutral); Alvarez, 228 Cal.App.4th at 948-49.

The F&R concluded that under *Alvarez* there was no duty to exercise reasonable care. As the Court reaches a contrary conclusion, it respectfully declines to adopt this aspect of the F&R.

    c.  Causation & Damages

"In order to establish liability on a negligence theory, a plaintiff must prove duty, breach, causation, and damages." Conroy v. Regents of the University of Cal., 45 Cal.4th 1244, 1250 (2009); see also Kesner v. Superior Court, 1 Cal.5th 1132, 1142 (2016). Thus, a determination that BOA owed Newman a duty of care addresses only one element of negligence. As discussed above, it is not clear that the various types of damages were caused by BOA's breach of the duty to use reasonable care in the loan modification review. The damages allegations in general are not tied to particular acts, and the allegations under the second cause of action barely mention the loan modification process. The Court is not satisfied that causation has been plausibly alleged in the PAC. Thus, as currently pled, the PAC does not contain a plausible negligence claim. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). However, it is not clear to the Court that allowing further amendment would be futile. Therefore, the Court will grant Newman one more opportunity to allege a plausible claim of negligent review of the loan modification application.[13]

---

[13] The F&R raised valid concerns regarding damages and causation. If Neman decides to file an amended complaint, he should consider some of the points made in the F&R in formulating new allegations.

18

### 3. 15 U.S.C. § 1692 and Cal. Bus. & Prof. Code § 17200

Newman objects that the F&R did not address claims under 15 U.S.C. § 1692 and Cal. Bus. & Prof. Code § 17200. Newman explains that "[b]oth of these causes of action flow from the Wrongful Foreclosure and the establishment of the fraudulent nature of the assignments, which Plaintiff argues should render the Note and Deed of Trust void *ab initio*." Doc. No. 78 at 20-23. However, as discussed above, the Court agrees with the F&R that the note and deed of trust are not void, and there is an insufficient showing that BONY's interest in the note and deed of trust is void. Because the wrongful foreclosure claims fail, the claims under § 1692 and § 17200 fail as well.

### 4. Conclusion

The "wrongful foreclosure" claims continue to fail because there are insufficient allegations of void transactions, which is required for standing under *Yvanova*. The Court will adopt the F&R with respect to *Yvanova* and the "wrongful foreclosure" claims. The Court respectfully declines to adopt the F&R's analysis regarding negligence and *Alvarez*. However, the *Alvarez* claim for negligence in reviewing the loan modification applications is not plausibly alleged in the PAC.[14] Given the allegations and the rationale of cases like *Alvarez*, *Daniels*, and *Johnson*, it is not clear to the Court that amendment would be futile. Newman will be granted leave to file an amended complaint that alleges a plausible cause of action for negligence based on the loan modification process. The amended complaint should include factual allegations that demonstrate a plausible claim, and Newman should take particular care to identify what damages were caused by which breaches of duty. The amended complaint may not include the other claims that have been dismissed and should eliminate extraneous and irrelevant allegations.

//
//
//
//

---

[14] The Court notes that the same damages and causation problems are present in the First Amended Complaint as are in the PAC.

**ORDER**

Accordingly, IT IS HEREBY ORDERED that:

1. The Findings and Recommendation issued on June 5, 2017 (Doc. No. 77) is ADOPTED IN PART and DECLINED IN PART, as described above;
2. Plaintiff's motion to amend (Doc. No. 67) is GRANTED in part in that, within twenty-one (21) days of service of this order, Plaintiff may file an amended complaint that alleges an "*Alvarez*" claim for negligent review of a loan modification application;
3. Plaintiff's motion to amend is in all other respects DENIED;
4. The Proposed Amended Complaint at Doc. No. 67 will not be filed or considered to be the operative complaint; and
5. If Plaintiff fails to file a timely amended complaint, leave to amend will be withdrawn and this case will be closed without further notice.

IT IS SO ORDERED.

Dated: September 29, 2017

SENIOR DISTRICT JUDGE